404 So.2d 460 (1981)
STATE of Louisiana
v.
Jerome HUDSON.
No. 80-KA-2236.
Supreme Court of Louisiana.
June 22, 1981.
Rehearing Denied October 9, 1981.
*461 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., James M. Johnson, Asst. Dist. Atty., for plaintiff-appellee.
Ronald V. McKneely, Jr., Bossier City, for defendant-appellant.
LEMMON, Justice.[*]
In this appeal from a conviction of second degree murder defendant's principal contention is that his confession to police two days after the murder, at which time he was 16 years old, resulted from an interrogation conducted without a prior consultation with an attorney or an informed adult, in violation of the requirements of State in the Interest of Dino, 359 So.2d 586 (La. 1978).
Facts
On October 18, 1979 defendant, a high school senior, called upon Mr. and Mrs. Garfield Lewis and informed them that they had been selected by a school club in Springhill to receive free groceries and gasoline as part of the club's project to assist older persons in the community. The next *462 morning defendant went to the Lewises' home and left with Mr. Lewis in his car to pick up the prizes.
Around noon defendant returned on foot and asked Mrs. Lewis if her husband had returned, stating that they had parted company in town. Mrs. Lewis then proceeded to town, but when she could not find her husband, she reported his disappearance to the police. She also informed the police of the alleged school project and the fact that her husband was last seen driving off in defendant's company.
As part of the investigation of Mr. Lewis' disappearance Patrolman Coleman picked up defendant at school and transported him to the station for questioning. Defendant agreed to assist the police in their search efforts, accompanying Chief Stephens to a photography studio where defendant claimed Mr. Lewis had stopped to have some film developed. However, when the studio owner stated he did not recall seeing Mr. Lewis there that day, defendant remembered that the studio had been too busy to develop the film and that he and Mr. Lewis had decided to take the film to defendant's uncle in Taylor, Arkansas to be processed.
Chief Stephens and Sergeant Parker then proceeded with defendant to Taylor, Arkansas, where defendant directed them to the residence of an elderly lady. In response to questioning, she stated that no man had been at her residence that day to make pictures or do anything else.
Chief Stephens returned with defendant to the police station, where he dispatched Patrolman Coleman to the Lewis residence to determine if Mr. Lewis had returned or if Mrs. Lewis had any further information. Mrs. Lewis informed Coleman she remembered that when defendant returned to their home, he was wearing a different pair of pants than the one he was wearing earlier that morning when he and Mr. Lewis left together.
In the meantime defendant's parents had been contacted and had arrived at the police station. Defendant's parents took Chief Stephens, Sergeant Parker and Patrolman Coleman to their home, where defendant's father agreed to let the officers look for defendant's pants. Defendant's father checked a pile of dirty clothes lying on the floor of the bedroom defendant shared with his brothers, and when Chief Stephens noticed a red stain on one pair of pants, defendant's father handed the pants to Chief Stephens. A broken butcher knife found in one of the pockets was identified by defendant's mother as belonging to her.
The group then returned to the police station, where Patrolman Coleman, in the presence of defendant's parents, advised defendant of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Stating that he understood his rights, defendant signed a card waiving those rights.
When officers questioned defendant about Mr. Lewis' disappearance, his parents insisted that he cooperate with the police and tell the truth. Defendant then stated that Mr. Lewis had been involved in a fight with a person named David Thomas, and he agreed to take them to the scene of the fight. Though he did not take them directly to the scene at first, defendant eventually led them to the place where Mr. Lewis' body was found. Determining that the victim had been stabbed and bludgeoned to death, the police took photographs and seized numerous articles.[1]
*463 When the group returned to the police station, Investigator Bloxom advised defendant, in the presence of his parents, as to the seriousness of the offense of murder and again repeated the Miranda warnings. Defendant was also advised that he could halt the questioning at any time and that any statement should be of his own free will. After defendant indicated he understood the officer's explanation, he stated that he still wished to talk about Mr. Lewis' death. Defendant then placed the blame for Lewis' death on David Thomas, who defendant said had flagged them down while they were driving on the highway to Arkansas.[2]
After additional investigation Investigator Bloxom returned on October 21 to question defendant further. Bloxom again advised defendant of his rights in the presence of defendant's parents, and again defendant stated he wanted to talk. At this interrogation defendant, although changing some details of the story, again placed the blame for the murder on David Thomas. Doubting defendant's truthfulness, Bloxom told him that he did not believe he was being completely honest and asked him if he would like some time alone to talk with his parents. Defendant replied affirmatively, and when Bloxom left the room, defendant's parents urged him to tell the truth. When Bloxom returned approximately ten minutes later, defendant admitted killing Mr. Lewis, but insisted he did so only in the face of threats by David Thomas to himself and his family.
Suppression of Confession
In the Dino decision, above, this court departed from the long-standing "totality of circumstances" rule in the determination of a juvenile's knowing and voluntary waiver of the right against self-incrimination and rejected a juvenile's confession on the basis that the prosecution had not affirmatively shown the juvenile, prior to confessing, had a meaningful consultation with an attorney or an informed parent, guardian or other adult interested in his welfare.
In the present case defense counsel argues that although the juvenile was allowed to consult with his parents before admitting the killing, the consultation was not with an informed adult, as required by Dino. On the other hand, the prosecution contends that the Dino standards were met in this case or, alternatively, that the court should readopt the "totality of circumstances" rule for reviewing a juvenile's confession.[3]
Although the Dino standards constitute a fine policy for law enforcement officials to follow in order to insure a knowing and voluntary waiver of rights by a juvenile, some members of this court believe that these standards are not constitutionally required.[4] Indeed, the Supreme Court of the United States in Fare v. Michael C., cited in footnote 3, held that the "totality of circumstances" test meets federal constitutional requirements. It is not necessary in this case, however, to decide whether to return to the "totality of circumstances" rule, since the facts of this case do not require exclusion of the confession under either standard and the police conduct was not the type the Dino standards were designed to prevent.
The confession in Dino was given by a very young, unsophisticated and immature (13-year old) child who was not afforded *464 any opportunity to engage in a meaningful consultation with his parents. Significantly, Dino was questioned outside of his mother's presence, although she had brought him to the police station and was available to sit in during the questioning.
Here, defendant was a 16-year old high school senior whose rights had been thoroughly explained to him in the presence of his parents, who heard and apparently understood the explanation.[5] His choice to speak about his offense was clearly knowing and voluntary.[6] Defendant's parents, after listening to the explanation of his rights, gave him the proper moral advice to tell truthfully all that he knew about the murder. There is no reasonable doubt about the voluntariness, reliability or the probative value of defendant's inculpatory statement.[7]
Finally, the purpose of the Dino standards is to insure that statements by a juvenile are reliable and voluntary, and the statement in this case is clearly not violative of that purpose. We hold that the prophylactic exclusionary rule of Dino (whatever its merits in cases of very young, unsophisticated children questioned out of the presence of their parents) does not require the exclusion of an inculpatory statement by a juvenile who, as in this case, was capable of intelligently waiving his rights, was questioned in the presence of his parents (who were of normal intelligence and who heard the explanation of rights), and was afforded an opportunity to consult privately with his parents before making the statement.
Suppression of Pants and Knife
Defendant moved to suppress the pants and knife seized during the warrantless search of the bedroom in his home. The trial court's refusal to suppress this evidence was clearly correct.
Both of defendant's parents admitted that they voluntarily allowed the police to enter their home for the purpose of finding the pants that defendant had worn earlier that day. The officers' failure to advise the parents of their right to refuse consent (if this advice was not givenChief Stephens testified that it was) is only one factor to be considered in determining whether the consent was voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The overall circumstances in this case clearly establish that the consent was voluntary.
However, defendant contends that his parents had no authority to consent to a search of the pocket of his pants. Defendant's parents possessed common authority over the premises they occupied with their children. See United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Wagster, 361 So.2d 849 (La.1978); State v. Packard, 389 So.2d 57 (La.1980). Moreover, defendant's parents also possessed common authority over the bedroom shared by defendant and his brothers.
*465 Under the overall circumstances the search of the room and of the pants pocket, in the presence of and with the consent of defendant's parents, was not unreasonable.
The conviction and sentence are affirmed.
MARCUS, J., concurs and assigns reasons.
BLANCHE, J., dissents for reasons assigned.
BARRY, J. ad hoc, concurs and assigns reasons.
CALOGERO, J., dissents for reasons assigned by BLANCHE, J.
MARCUS, Justice (concurring).
While I agree that the Dino standards were met here, I believe that we should return to the "totality of circumstances" test and overrule Dino. Accordingly, I respectfully concur.
BLANCHE, Justice (dissenting).
If this Court wishes to abandon the rule espoused in Dino and return to a "totality of the circumstances" test, this is the proper case. However, for this Court to find that the juvenile defendant's statements should not be excluded under either standard is incorrect.
Two of the three prerequisites called for in Dino were clearly not met before the defendant was interrogated and his inculpatory statements elicited.
First, although the defendant's parents were with him when he was read his Miranda rights prior to being interrogated, the state has fallen woefully short of establishing that the juvenile actually consulted with an attorney or adult before he waived his constitutional rights. The record clearly reflects that the defendant's parents sat mute while the defendant was read his rights by Patrolman Coleman and Investigator Bloxom. They never actually consulted with the defendant in regard to the rights he was waiving. Not until the second interview on October 21 with Investigator Bloxom did they consult with the defendant while he was being interrogated. While it is highly doubtful that they discussed his Miranda rights during that ten minute nontaped conversation, even if they had, it would have been far too late as the defendant had already given several inculpatory statements. Thus, the first prerequisite of Dino was not satisfied.
Second, the third prerequisite of Dino that the adult consulted who is not an attorney be fully advised of the juvenile's rights was not satisfied. The record is silent as to whether the parents themselves understood the constitutional rights their son would be waiving when he elected to give police authorities a statement. Absent proof that the parents understood what these rights were, I fail to see how there could be a finding that they intelligently consulted with the juvenile concerning them. I do know that they heard the police read the Miranda warnings to the defendant, but there is no evidence that his parents understood them nor the consequences that would flow from his waiver.
Unless this Court overrules Dino, I fail to see how we can say this juvenile defendant's statements were properly taken. I respectfully dissent.
BARRY, Justice Ad Hoc (concurring).
This case clearly presents the factual opportunity to overrule Dino and a return to the "totality of the circumstances" test.
I therefore concur in the result which should have overruled the judicial prerequisites established in Dino.

ON APPLICATION FOR REHEARING
PER CURIAM.
In In Re Dino, 359 So.2d 586 (La.1978), this Court held that "in order for the State to meet its heavy burden of demonstrating that a waiver is made knowingly and intelligently, it must affirmatively show that the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian, or other adult interested in his welfare before he waived his right to counsel and privilege against self-incrimination." 359 So.2d at 594.
*466 We affirm this holding. Although we conclude that the trial judge was justified in finding that the requirements of Dino were complied with by the police officers, it should be noted that this case barely passes muster on the question of whether the juvenile was given an opportunity to engage in a meaningful consultation with his informed parents before he waived his right to counsel and privilege against self-incrimination. The police officers testified that the juvenile and his parents were fully informed of the juvenile's rights in the presence of each other before interrogation commenced, but they did not testify that the juvenile was allowed an opportunity to confer with the parents before he actually waived his rights. However, the juvenile's mother testified that she talked with her son privately after the rights had been explained to him for maybe a minute before the questioning commended. The father testified that he conferred with his son at about the time the son was advised of his constitutional rights in his presence, and that this conversation could have occurred after the Miranda warnings and explanation, but that he could not be sure. Although the question is extremely close, we ultimately conclude that there is sufficient evidence in the record to sustain the trial judge's ruling.
Accordingly, the rehearing is denied.
MARCUS and LEMMON, JJ., concur in the denial.
NOTES
[*] Judges Jim Garrison, Lawrence A. Chehardy and Denis A. Barry of the Fourth Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Blanche and Lemmon.
[1] Defendant also moved to suppress certain physical evidence found at the scene of the murder on the basis that the discovery was the product of his illegal confession. However, Officer Coleman had previously discovered the scene through an investigation independent, of defendant's information. See Killough v. United States, 336 F.2d 929 (D.C.Cir.1964). For an excellent discussion and application of the "inevitable discovery" doctrine, see the discussion by the Supreme Court of Iowa in State v. Williams, 285 N.W.2d 248 (Iowa 1979) (following the reversal of conviction by the United States Supreme Court in Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 [1977]).

Furthermore, because of our disposition of defendant's contention regarding the validity of his confession, we need not decide whether violation of the Dino rule requires exclusion of derivative physical evidence discovered as a result of a voluntary confession. See Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); State v. Kent, 391 So.2d 429 (La.1980).
[2] David Thomas was later identified by police as a college student who occasionally played basketball with defendant in Springhill. Thomas' alibi was verified by police during the course of their investigation.
[3] The "totality of circumstances" test is the majority rule in this country. See Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); In Re W.B.W., 397 A.2d 143 (D.C.App.1979); In Re A.D.R., 603 S.W.2d 575 (Mo.1980); Haug v. State, 406 A.2d 38 (Del.1979); State v. Hunt, 607 P.2d 297 (Utah 1980); State v. Ann Marie C., 407 A.2d 715 (Me.1979).
[4] The confession in Dino would have been excluded even under the "totality of circumstances" test, and arguably the announcement of a more restrictive test was dicta and not necessary to the holding.
[5] Defendant's mother had gone to the 12th grade and his father to the 8th grade.
[6] The presence of the juvenile's parents helps to assure the voluntary nature of a confession. The presence of parents should prevent any sort of overbearing or abusive police conduct. No such coercive behavior is even alleged to have occurred here, and there is no dispute regarding the voluntariness of defendant's confession.
[7] Defense counsel contends that defendant's consultation with his parents was inadequate, since his parents did not tell him, for example, that he could be prosecuted as an adult or that he could go to prison for life if he incriminated himself.

In determining the admissibility of a juvenile's confession given after consultation with his parents, a court should not base its determination on whether a criminal defense attorney would have given different advice than the parents gave. If parents' advice to tell the truth requires exclusion of a juvenile's confession, then virtually no guilty juvenile will ever be convicted on a confession given after consultation with parents. The proper inquiry is whether the presence of and consultation with a concerned adult resulted in a voluntary and reliable statement. Moreover, Dino's requirement of the presence of an adult interested in the juvenile's welfare was certainly met in this case.