454 So.2d 343 (1984)
STATE of Louisiana
v.
Clarence ROBERSON.
No. KA-1586.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1984.
Writ Denied October 12, 1984.
*345 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for appellee.
Anthony L. Glorioso, New Orleans, for appellant.
Before GULOTTA, BARRY and CIACCIO, JJ.
GULOTTA, Judge.
On appeal of his conviction and sentence as a second offender for possession of phencyclidine, a violation of LSA-R.S. 40:966(C), defendant Clarence Roberson requests this court to review the record for errors patent, and additionally urges ten assignments of error. We affirm.
On September 30, 1982, on execution of a search warrant for the residence and garage at 7341 Poitevant Street in New Orleans, police officers confiscated a large quantity of phencyclidine, lactose milk sugar, and a set of scales. Roberson, his wife, and another adult male were arrested on the premises. At the time of his arrest, *346 Roberson was on probation for prior illegal possession of this drug.
Charged with possession with intent to distribute phencyclidine in violation of LSA-R.S. 40:966(A)(1), Roberson was found guilty by a twelve member jury of simple possession. The trial judge sentenced him to serve a maximum twenty year sentence as a multiple offender.

ERRORS PATENT
Having examined the documents in the record, we find no errors patent. We now address defendant's specific assignments of error, including the sufficiency of the evidence to support the conviction.

ASSIGNMENT OF ERROR 1
Defendant first contends the trial judge erred in denying his motion to suppress the evidence seized for lack of probable cause to issue the search warrant of 7341 Poitevant Street.
The affidavit in support of the search warrant states that the affiant-police officers had been provided reliable information from two informants about burglaries and stolen property in the past, as well as information leading to arrests and convictions in drug cases.
According to the affidavit, one of these informants told the officers that he had seen five men manufacturing PCP in the garage of "Buddy" Roberson's house of Poitevant Street, that he could smell the PCP in Roberson's house, garage and the surrounding area, and that he knew "Buddy" manufactured PCP in the garage for distribution and kept some of it in the refrigerator and a kitchen cabinet. The second informant told one officer that he knew "Buddy" was heavily dealing in PCP, presently had a large quantity of it, and was watching for police. The affiant officers further averred that a computer check had revealed that Clarence and Cassandra Roberson lived at 7341 Poitevant Street, and had previously been arrested at least twice for narcotic violations. The narcotics division of the police department had also informed the officers that surveillance of the house was difficult because Roberson used binoculars to watch for police.
When probable cause for issuance of a search warrant is based upon a tip received from a confidential informant, the "totality of circumstances", including the "veracity" and "basis of knowledge" of the informants supplying hearsay information, must be sufficient to allow the magistrate to make a practical, common sense decision whether there is a fair probability that contraband will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Manso and Warden, 449 So.2d 480 (La. 1984); State v. Lingle, 436 So.2d 456 (La. 1983).
Considering the information supplied to the magistrate, we cannot say he erred in finding probable cause for issuance of the search warrant. The informants' history of prior information to the police officers in other cases established their "veracity", and their personal observation of drugs at the premises sufficiently showed their "basis of knowledge" in the instant case. Based on the information set forth in the affidavit, and the police officers' corroborative computer check, the magistrate had a substantial basis for concluding that there was a fair probability that contraband would be found at the named premises. Accordingly, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR 2
Defendant next argues the trial court erred in failing to excuse a juror for cause because of her bias in favor of police officers.
During voir dire, and after the defendant had exhausted his peremptory challenges, a potential juror testified that her son was an explorer scout who had worked with the police department. When asked whether this relationship would make her more likely to believe a police officer than the defendant or any other witness, the juror at first answered that she "hoped not", but *347 later stated: "To be honest, I would probably be more prejudiced to policemen."
After the defense moved to challenge this juror for cause, the prosecutor then asked the juror if she could "... listen to what's presented to you today and not have an ingoing bias on the front end against the State or have an ingoing bias on the front end against the defendant...." The juror responded that she could do so. The defense's challenge for cause was denied.
Although a juror who is biased in favor of the testimony of law enforcement officers over that of defense witnesses is not competent to serve, a trial judge does not err in accepting a juror who demonstrates willingness and ability to decide the case impartially, even though he may have initially voiced an opinion seemingly prejudicial to the defense. State v. Davenport, 445 So.2d 1190 (La.1984); State v. Governor, 331 So.2d 443 (La.1976); State v. Johnson, 324 So.2d 349 (La.1975).
Despite the juror's indication in our case that she would probably be more prejudiced toward policemen, she responded, on further questioning, that she could listen to the evidence presented without having a bias against either the State or the defense. Under these circumstances, we cannot say the court abused its discretion in concluding that the juror had been rehabilitated. State v. Celestine, 443 So.2d 1091 (La. 1983); State v. Benoit, 440 So.2d 129 (La. 1983). Accordingly, we find no error.

ASSIGNMENTS OF ERROR 3, 4, 5, 6, & 7
In these assignments of error, defendant complains of the trial judge's failure to grant a mistrial as the result of various comments by the judge, witnesses, and the prosecutor during trial.
In Assignment of Error 3, defendant argues the trial judge erred in failing to grant a mistrial after erroneously referring to phencyclidine as a "controlled dangerous substance, a narcotic drug" instead of a "suppressant". Although defendant's description of the drug may be technically correct, we cannot say how the trial judge's misnomer deprived defendant of a fair trial or resulted in prejudice. LSA-C.Cr.P. Art. 775. Accordingly, we find no merit to this argument.
Defendant further contends, in Assignment of Error 4, that a mistrial should have been granted when the prosecutor, during his opening statement, told the jury that they would hear testimony from police officers that they had "... received information from two confidential informants that at 7341 Poitevant Street a person was manufacturing Tea, which is the street name for Angel Dust." According to defendant, the prosecutor's comments constituted an improper reference to another crime (manufacturing phencyclidine) not within the Bill of Information (charging defendant with possession with intent to distribute), and was therefore mandatory grounds for granting a mistrial pursuant to LSA-C.Cr.P. Art. 770(2).[1] We disagree.
After sustaining the defense's objection to the prosecutor's comment, the defense attorney asked the court to "please instruct the jury accordingly". The trial judge thereupon admonished the jury "... to disregard the last remark of the District Attorney".
We conclude that the prosecutor's reference to the informant's statement about manufacture of the drug at the Poitevant Street premises does not constitute a reference to another crime by the defendant, but merely sets forth the circumstances underlying the issuance of the search warrant based on probable cause that led to the seizure of the large amount of phencyclidine *348 and defendant's arrest. See State v. Franklin, 449 So.2d 63 (La.App. 4th Cir.1984). As such, it was part of the res gestae of the crime charged. See State v. Harper, 430 So.2d 627 (La.1983). Furthermore, even if the prosecutor's comment was improper, we cannot say it prevented a fair trial or significantly contributed to the conviction. See State v. Gibson, 391 So.2d 421 (La.1980). Moreover, the trial judge's admonition to the jury removed any resultant prejudice. Under these circumstances, it was not mandatory that a mistrial be granted.
Defendant further complains of references by a testifying police officer to the scene of the arrest as "the Roberson residence". According to defendant, this reference connotes prior arrests involving this defendant. We disagree. The police officer's testimony that he had seen Roberson living at that address at least a year before the arrest was relevant and probative of defendant's residence at the premises where the drug was confiscated. Furthermore, a police officer's simple reference to a familiarity with the defendant and observation of him on other occasions does not constitute a reference to "another crime" committed by the defendant within the meaning of LSA-C.Cr.P. Art. 770(2). State v. Harper, 430 So.2d 627 (La.1983); State v. Michel, 422 So.2d 1115 (La.1982). Accordingly, we find no error in the trial judge's refusal to grant a mistrial under these circumstances.
We likewise reject defendant's further arguments in Assignment of Error 4 concerning the police officers' hearsay testimony about information received from the informants prior to the issuance of the search warrant.[2] The trial judge sustained defense objections to this hearsay testimony and admonished the jury to ignore it. We conclude that the trial judge's corrective action removed any prejudice and obviated the necessity of declaring a mistrial based upon these references to "informants".
In Assignment of Error 5, defendant further contends the trial court erred in refusing to grant a mistrial as a result of Officer Cutrer's testimony that defendant's wife Cassandra was arrested with him. According to defendant, this reference to the wife's arrest effectively "impeached" her credibility and he was therefore "unable to call upon her as a witness at the trial". In our opinion, the officer's answer was responsive to the prosecutor's question whether anyone was arrested at the Poitevant Street premises. We fail to find any prejudice. Accordingly, we find no error.
Assignment of Error 6 concerns the prosecutor's attempt to prove who paid the utility bill at 7341 Poitevant Street. When the prosecutor asked Officer Cutrer if he had contacted a utility company to verify who lived at the address where the warrant was executed, the trial judge sustained the defendant's hearsay objection before the officer completed his answer. Again, during the prosecutor's closing argument, the trial judge sustained the defendant's objection to the prosecutor's statement to the jury, "Did you hear me ask Officer Cutrer if he checked the utilities?" We cannot say that the prosecutor's brief references to the utility bill during questioning and argument prejudiced the defendant. Moreover, the trial judge's prompt sustaining of the defense objections prevented any improper influence of the jury.
We likewise reject defendant's Assignment of Error 7 concerning the prosecutor's comments during closing arguments about the effects of phencyclidine on human beings: "And you heard Officer John Palm ... tell you, the only use he knows for this stuff is for veterinary purposes, tranquilizers I guess for horses, cows and things a heck of a lot bigger than *349 human beings. Imagine its effect on a human being...." Although defendant contends this reference was irrelevant and highly prejudicial, we cannot conclude that it had any measurable effect on the jury or significantly contributed to the verdict. Accordingly, we find no abuse of the trial court's discretion in refusing to grant a mistrial.
For the foregoing reasons, Assignments of Errors 3 through 7 lack merit.

ASSIGNMENT OF ERROR 8
In this assignment, defendant complains of the responsive verdict sheet furnished to the jury.
Defendant was charged with violating LSA-R.S. 40:966, possession of phencyclidine with intent to distribute. The verdict sheet listed the following possible verdicts:

"RESPONSIVE VERDICTS"
"You may render any one of the following responsive verdicts:
1. GUILTY
2. GUILTY OF ATTEMPTED POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE, TO WIT: PHENCYCLIDINE, WITH INTENT TO DISTRIBUTE.
3. GUILTY OF POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE, TO WIT: PHENCYCLIDINE.
4. GUILTY OF ATTEMPTED POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE TO WIT: PHENCYCLIDINE.
5. NOT GUILTY"
"You are to attach no significance whatsoever to the numerical order in which these verdicts are listed."
The jury found defendant guilty of simple possession of phencyclidine.
Because conviction for simple "possession" of phencyclidine bears the same imprisonment penalty as possession with intent to distribute (not more than ten years)[3], defendant contends that "possession" is an "included grade" but not a "lesser" offense of the crime charged. Roberson argues, therefore, that the verdict form should have listed "possession" above "attempted possession with intent to distribute", which bears a lesser penalty. According to defendant, the jury's verdict was undoubtedly a "compromise", but the verdict form prevented it and frustrated the jury's intent. We disagree.
The verdict sheet given the jury in the instant case tracks the responsive verdict form set forth in LSA-C.Cr.P. Art. 814(A)(49):
Art. 814 Responsive verdicts; in particular:
A. The only responsive verdicts which may be rendered when the indictment charges the following offenses are:
* * * * * *
49. Possession of Controlled Dangerous Substances With Intent to Produce, Manufacture, Distribute, or Dispense:
Guilty.
Guilty of attempted possession of controlled dangerous substances with intent to produce, manufacture, distribute or dispense.
Guilty of possession of controlled dangerous substances.
Guilty of attempted possession of controlled dangerous substances.
Not guilty."
Furthermore, the trial judge expressly admonished the jury in writing not to attach any significance to the numerical order in which the verdicts were listed. Defendant's argument based on the jury's intent is therefore speculative. Accordingly, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR 10
Defendant further contends there was insufficient evidence to support his conviction.
*350 In review of the sufficiency of evidence to support a conviction, we must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). Where circumstantial evidence forms the basis of the conviction, it must exclude every reasonable hypotheses of innocence. LSA-R.S. 15:438; State v. Camp, 446 So.2d 1207 (La.1984); State v. Wright, 445 So.2d 1198 (La.1984).
Evidence in the instant case establishes that defendant was arrested at a premises containing enough phencyclidine for an estimated 8,000 street doses or "hits". Officer Marino testified that he had seen Roberson living at the Poitevant Street address about one year before the arrest. Viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient proof for the jury to exclude the possibility that Roberson did not live at the Poitevant Street address, and to find him guilty of possession of phencyclidine beyond a reasonable doubt. Accordingly, we find no merit to this assignment.

ASSIGNMENT OF ERROR 9
We further reject defendant's contention that the maximum twenty year sentence imposed on defendant as a second offender is excessive. According to defendant, the trial judge sentenced him based upon the erroneous belief that he was distributing phencyclidine or possessed it with intent to distribute, resulting in an excessive sentence that frustrated the jury's intent to find him guilty of a "lesser offense".
Although the jury saw fit to find defendant guilty of simple possession instead of the charged offense of possession with intent to distribute, the verdict in no way restricts the trial judge's discretion in imposing a permissible sentence, especially where the imprisonment penalty range for both offenses (possession and possession with intent to distribute) is the same.
At the sentencing hearing, the trial judge expressly stated that the jury's guilty verdict of simple possession "can in no way close the court's eyes ... to the facts of what was presented to the jury in terms of actual physical evidence", i.e. the quantity of phencyclidine in defendant's possession sufficient to manufacture eight thousand individual packets "to be distributed somewhere, at some time, most likely in this community." The judge went on to note that defendant had previously been found in possession of a small quantity of the drug but "with much the same apparatus and other devices, and substances for cutting purposes that would again indicate that defendant at that time was most likely involved in the distribution of this drug". The court further noted that defendant had previously pled guilty to simple possession of phencyclidine and was on probation at the time of his arrest for the instant offense.
Under these circumstances, we conclude the trial court did not mistakenly sentence defendant for the crime of possession with intent to distribute, but rather gave proper weight to the quantity of the drugs seized and defendant's prior record in imposing the maximum penalty for this second offense of possession.
The transcript of the sentencing hearing further indicates the trial judge after meticulously considering and articulating the factors listed in LSA-C.Cr.P. Art. 894.1, found no mitigating circumstances for a lesser sentence. Indeed, he noted that there was an undue risk that defendant would commit other criminal activity during any period of a suspended sentence or probation, that defendant was in need of correctional treatment in a custodial environment that could be most effectively provided by his commitment to an institution, and that any sentence less than the maximum in this case would deprecate the seriousness of the defendant's crime.
*351 Considering the aggravating circumstances articulated by the trial judge, we do not find the maximum twenty year sentence, to run consecutively to the three year sentence for the prior offense, to be excessive. The large quantity of the drug in defendant's possession and his commission of the offense while on probation for the same crime make his violation "egregious".
Under the circumstances, we cannot say the maximum sentence imposed is constitutionally excessive as being "grossly out of proportion to the severity of the crime". State v. Guajardo, 428 So.2d 468 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983).
Having so concluded, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] Art. 770. Prejudicial remarks; basis of mistrial

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible....
[2] Concerning defendant's arrest, Officer Richard Marino testified, "We received information from ...", whereupon defendant's attorney objected. Officer Joe Cutrer likewise testified, "Okay, on the date of the arrest, we had an informer that ... gave us some information pertaining to a PCP lab being operated ..." whereupon the defense attorney again objected.
[3] Pursuant to LSA-R.S. 40:966(B)(2), the penalty for possession with intent to distribute phencyclidine is imprisonment "at hard labor for not more than ten years" and a mandatory fine "of not more than fifteen thousand dollars." Under LSA-R.S. 40:966(C)(2), simple possession of phencyclidine likewise carries a prison term "at hard labor for not more than ten years" but only a possible fine "of not more than five thousand dollars."