475 So.2d 783 (1985)
STATE of Louisiana
v.
Lawrence R. CROWLEY.
No. KA-2272.
Court of Appeal of Louisiana, Fourth Circuit.
August 19, 1985.
*785 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Beryl M. McSmith and Julia S. Coley, Asst. Dist. Attys., New Orleans, for plaintiff-appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Before GARRISON and ARMSTRONG, JJ., and HUFFT, J., Pro Tem.
GARRISON, Judge.
The defendant, Lawrence Crowley, was charged by grand jury indictment with the second degree murder of an unknown white male in violation of LSA-R.S. 14.30.1.[1] The defendant was found guilty as charged and was sentenced to serve life imprisonment without benefit of parole, probation or suspension of sentence. He now appeals his conviction and sentence.
On March 24, 1983, the police were summoned to an apartment building at 2619 North Robertson Street by the owner of the building, Elizabeth Williamson. Ms. Williamson explained to the police that she had received complaints from other apartment dwellers about the apartment occupied by the defendant. Ms. Williamson asked the police to instruct the defendant to vacate the premises as he was not the person to whom Williamson had rented the apartment.
According to testimony by Ms. Williamson and the two police officers who responded to the call, the police told the defendant to vacate the premises. The defendant then invited the three people inside because he wanted to collect some of his belongings. Once inside the apartment, the policemen noticed a dog hide and drops of blood in the bathroom. The officers also watched the defendant go into the kitchen and remove approximately thirty pounds of meat from the freezer. Noticing that this meat had a strange appearance, one of the officers commented to the other that he wondered what type of meat this was. The defendant volunteered that it was dog meat and that he ate it all the time. At that time, the police officers arrested the defendant for cruelty to animals.
The police department then contacted the Society for the Prevention of Cruelty to Animals (S.P.C.A.) who immediately sent officers to the apartment to take photographs and to seize the meat. The meat was later transported to the coroner's office for analysis. An analysis of the meat indicated that some of the meat was from a human with Group-O blood type. Human blood was also found on a knife seized from the apartment but the quantity of blood was insufficient to determine a blood type. The defendant was then charged with second degree murder.
Dr. Richard Tracy, a pathologist in the coroner's office, examined the meat in question and identified some pieces as parts of a dog and other pieces as human ribs, breast bone, kidney, spleen, shoulder blade, and voice box. Some skin tissue attached to the voice box indicated that the victim was a male with very pale Caucasian pigmentation and a dark brown closely shaven beard. Dr. Tracy gave his opinion that the approximate age of this victim was between thirty and fifty. Dr. Tracy also estimated that the cause of death was stab wounds to the chest. This estimation was made in light of stab wounds on some of the tissue and indications of considerable bleeding before death.
Another witness, Elizabeth Watts, an anthropology expert, testified that she concluded that the skeletal remains examined belonged to a male who was approximately in his late thirties or early forties.
Testimony was then presented concerning Maurice Nolan, the renter of the apartment *786 from which the defendant was asked to vacate and from which the meat in question was seized. Nolan's sister-in-law testified that Nolan became forty years old in December of 1982. She stated that Nolan always kept in constant contact with her and her husband until his disappearance in early March, 1983. Nolan's neighbor, Darryl Jones, testified that he saw Nolan for the last time on Sunday, March 6, 1983 and that the defendant was living in Nolan's apartment after that date. A lab technician from a local plasma center testified that her records indicated that Maurice Nolan had an O-positive blood type.
A review of the record reveals that there are no errors patent.
By his counsel's only assignment of error and by his sixth pro se assignment of error, the defendant contends that the evidence in this case was insufficient to support a second degree murder conviction. Specifically, the defendant argues that it was error for the prosecution to argue to the jury that the dismembered remains found in the apartment were Maurice Nolan's even though no positive identification could be made.
According to our appellate standard of review, when viewing the evidence in the light most favorable to the prosecution, it must be determined whether a rational juror could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this case, human meat was found in an apartment occupied by the defendant. The meat was analyzed and the physical characteristics of the victim matched those of the tenant of the same apartment, Maurice Nolan. Nolan had disappeared shortly before the defendant moved into the apartment and has never been seen since. Some of the meat indicated stab wounds that had been inflicted prior to the victim's death. This was concluded due to considerable bleeding near the wounds. At the time of his arrest, the defendant had in his possession several identification cards belonging to Nolan and two checks made payable to Nolan. Viewing all this evidence in the light most favorable to the prosecution, the jury could have concluded that the defendant was guilty beyond a reasonable doubt of second degree murder.
Defendant's claim that the evidence in this case was insufficient because the State failed to positively prove the identification of the victim is without merit. The defendant was charged with the second degree murder of an "unknown white male"; therefore, no positive identification of the victim was required of the State.
The defendant's next contention is that errors were made in his appeal process. Defendant first claims that his counsel failed to file a brief in his appeal. However, because his counsel filed a brief on December 19, 1984, this claim is moot. Defendant additionally claims that his trial transcript was not prepared within the time allotted by the trial court. Because the defendant has shown no prejudice to him because of this delay, this claim is without merit.
The defendant also claims that he did not receive copies of the transcripts of his motion hearings and trial. Defendant's appeal counsel received all of the transcripts necessary for the preparation of defendant's appeal. Furthermore, the record does not indicate that the defendant requested the transcripts from the trial court and the defendant has not demonstrated a particularized need as required by U.S. v. MacCollom, 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976). Therefore, this assignment of error is without merit.
In his second assignment of error, the defendant claims that he received ineffective assistance of counsel at trial. Specifically, he claims that his attorney was ineffective because he selected a tainted jury, did not ask for a change of venue and failed to bring out at trial the fact that the alleged victim was a homosexual. In order to substantiate a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient *787 and that the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment and that defendant was deprived of a fair trial.
Defendant has failed to make either of these showings. His claim that a tainted jury was picked due to the fact that many of the jurors had heard something about the case through the media is without merit. A juror need not be automatically disqualified because he has heard something about the case if that juror feels that he can follow the law and render a fair and impartial verdict. See State v. Roberson, 454 So.2d 343 (La.App. 4th Cir.1984), writ denied, 458 So.2d 126 (La.1984). Additionally, the defendant's claim that it was error of his counsel to fail to request a change of venue is without merit for the same reason. The defendant has neither demonstrated nor alleged that the jurors chosen could not follow the law and render a fair and impartial verdict. Furthermore, no evidence in the record supports this contention.
Defendant's final claim that counsel erred in not bringing out at trial the fact that the alleged victim was a homosexual is completely without merit. Defendant has made no showing as to the relevancy or admissibility of this allegation.
In his third assignment of error, the defendant contends that the trial court erred in allowing the introduction at trial of meat that was tainted because it was held overnight at the S.P.C.A. before being transferred to the coroner's office for analysis. However, this meat was seized pursuant to the defendant's arrest for cruelty to animals. The meat was believed to be dog meat because of the defendant's own admission. Therefore, it was not reversible error for the meat to be kept overnight at the S.P.C.A. This assignment of error is without merit.
By his fourth assignment of error, the defendant claims that the trial court erred in allowing testimony concerning Maurice Nolan, who was not positively identified as the victim in this case. The defendant specifically objects to the testimony of Laura Nolan, Maurice Nolan's sister-in-law. However, because no objection as to this testimony was made at trial, this alleged error cannot now be urged on appeal. LSA-C.Cr.P. art. 841. This assignment of error is without merit.
In his fifth assignment of error, the defendant contends that the meat and butcher knife seized from the apartment and the papers seized from him at Central Lockup were improperly introduced at trial. He specifically alleges that the evidence was seized pursuant to an illegal arrest and was not shown to him prior to trial. Additionally, he claims that some of the evidence was not sufficiently linked to him or to the crime.
Although the police did not have a warrant to search the apartment and seize the evidence in question, the search and seizure was incident to a lawful arrest, which is one of the exceptions to the warrant requirement. It is incumbent upon the State to prove that this exception applies. State v. Ruffin, 448 So.2d 1274 (La.1984). The general rule is that a warrantless arrest must be based upon probable cause. State v. Jackson, 450 So.2d 621 (La.1984). Probable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
In this case, the officers observed a dog hide and drops of blood in the apartment in which the defendant was residing. Additionally, the defendant removed meat from the freezer and identified it as dog meat, claiming that he ate it all the time. These circumstances provided probable *788 cause for the defendant's arrest on the charge of cruelty to animals. Therefore, the evidence was properly seized pursuant to a lawful arrest.
The defendant further contends that the knife seized from the apartment was not shown to be connected to him or to the crime. However, the knife was found in the apartment where human remains were found and it contained traces of human blood. This claim is meritless.
Additionally, the defendant argues that he was prejudiced because photographs of the apartment and of the knife were not shown to him during the suppression hearing. Because the defendant gives no indication as to how this prejudiced him, this claim is also without merit.
Finally, the defendant alleges that the evidence was seized pursuant to an unlawful arrest because the police officers did not have a court order of eviction and thus did not have the right to enter the apartment. However, the defendant was not the rightful tenant of the apartment according to the owner of the building. The police had been summoned to the apartment by the building owner to ask the defendant to vacate the premises. The building owner had taken this action because of complaints received from other tenants about the defendant. Therefore, because the defendant did not have permission to live in the apartment, no court order was necessary to evict him from the premises.
This assignment of error is without merit.
In his next assignment of error, the defendant claims that the State erred in not introducing certain exculpatory evidence. This alleged evidence consisted of four social security cards, a California bankbook, other papers and a Louisiana driver's license in the names of "different unknown people". Because the State is under no obligation to introduce exculpatory evidence at trial and because this evidence does not appear to be exculpatory, this assignment of error is without merit.
In the eighth assignment of error, the defendant contends that it was error for the State not to prosecute the cruelty to animals charge. However, the record indicates that although the defendant was booked with this charge, he was only formally charged with second degree murder. Therefore, this claim is meritless.
By his next assignment, the defendant argues that his conviction was based upon a violation of his right against self-incrimination. Defendant is apparently referring to the statement made to the policemen in which he stated that the meat he was unpacking from the freezer was dog meat. After this statement was made, the defendant was arrested for cruelty to animals and the meat was seized for analysis.
Defendant's attorney originally filed a motion to suppress the confession but this motion was later withdrawn. Furthermore, because no objection was made at trial to any testimony concerning this statement, the defendant cannot now complain of any error which may have occurred. LSA-C.Cr.P. art. 841. Therefore, this assignment of error is without merit.
In his tenth assignment of error, the defendant claims that the State erred in using the defendant's incorrect middle initial in the records. The defendant does not deny that he is the person charged with the second degree murder and he does not allege any prejudice that resulted from use of the incorrect middle initial. Therefore, any error was harmless and this assignment of error is without merit. LSA-C. Cr.P. art. 921.
Defendant's next claim is that he was prejudiced by the State's use of an arrest sheet which incorrectly noted that the defendant had two previous arrests for murder. The defendant alleges that because of this incorrect arrest record, he was precluded from testifying at trial because this arrest record would have been presented to the jury to impeach his credibility. However, even if the defendant had testified at trial, he could only have been *789 questioned about his prior convictions, not his prior arrests. LSA-R.S. 15:495. Thus, the defendant's prior arrests could not have been brought to the jury's attention unless the defendant had introduced this evidence himself. This claim is without merit.
In his final assignment of error, the defendant claims that the trial court erred in admitting into evidence prejudicial photographs that were not shown to him at the motion to suppress the evidence hearing. His attorney objected at trial to the introduction of these photographs. The trial court found that these photographs of human remains were admissible evidence.
A viewing of these photographs indicates that they are neither gruesome nor unduly prejudicial as suggested by the defendant. Therefore, the introduction of these photographs into evidence was not error and this claim is without merit.
For the reasons stated above, we affirm the conviction and sentence of the defendant.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:30.1 states in part:

Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict bodily harm.