525 So.2d 77 (1988)
STATE of Louisiana, Appellee,
v.
Michael Wayne BELTON, Appellant.
No. CR87-838.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*78 Michael J. Bonnette, Natchitoches, for defendant-appellant.
Michael Henry, Dist. Atty., Natchitoches, for plaintiff-appellee.
Before FORET and DOUCET, JJ., and SWIFT[*], J. Pro Tem.
FORET, Judge.
This is a juvenile proceeding.
On April 10, 1987 and April 28, 1987, petitions[1] were filed charging Michael Wayne Belton [2] with unauthorized use of a movable, a violation of La.R.S. 14:68; hit and run driving, a violation of La.R.S. 14:100; and two counts of theft of objects having a value of less than $100, violations of La.R.S. 14:67. Appellant was adjudicated a delinquent on May 28, 1987. On disposition, the juvenile was committed to the Department of Public Safety and Corrections for a period not to exceed four and one-half years. An appeal was taken pursuant to La.C.J.P. art. 97.

ASSIGNMENT OF ERROR
The trial court erred in allowing into evidence the juvenile defendant's alleged confession to the offenses.

FACTS
On October 28, 1987, Richard Rogers of the Department of Juvenile Services went to pick up an automobile assigned to his department that was being repaired at the Natchitoches Motor Company. The keys that the repairman stated he had left in the car were missing from the car. Another department employee picked up the car later with a spare set of keys and parked it at the juvenile services office. The vehicle was involved in an accident later that night. Witnesses heard screeching noises and a crash outside their home. They saw a person emerge from the vehicle who left without giving his identity. The witnesses recounted the events of the sole occupant's exit and gave a physical description to the police. Deputy Danny Hall of the Natchitoches Parish Sheriffs Office picked up the defendant riding a bicycle which matched the description given by the witnesses, who also positively identified appellant as the person they had seen exit the vehicle after the accident.
The juvenile was transported to the sheriffs office and his probation officer of three years, Frances Hyams, was called to act as a "concerned adult" for him. Ms. Hyams was called because appellant's mother was in prison, his father's whereabouts were unknown, and the grandmother he lived with was elderly and blind. After being advised of his rights and discussing them with Ms. Hyams, appellant gave a statement admitting the use of the car, the hit and run, and the theft of the bicycle. Residents near the scene of the accident identified the bicycle as belonging to Trey Beasley and missing without his permission.

ASSIGNMENT OF ERROR
Appellant assigns error to the trial court ruling allowing the statement by appellant into evidence. It is argued that the procedures for protection of the juvenile's constitutional right against self-incrimination as set out in State In the Interest of Dino, 359 So.2d 586 (La.1978), cert. den., 439 U.S. 1047, 99 S.Ct. 722 (1978), were not complied *79 with. In Dino, the Supreme Court examined the confession of a juvenile under the totality of the circumstances and concluded that the prosecution did not meet the heavy burden of proving that the juvenile "... was aware not only of his rights, but also of the consequences of foregoing them, that he knew he was faced with a phase of the adversary system, and that he was aware that he was not in the presence of persons acting solely in his interest." Dino, supra, at 591. See also State v. Kent, 371 So.2d 1319 (La.1979).
The court in Dino further stated additional requirements where a juvenile is involved, holding:
"Accordingly, the purported waiver by a juvenile must be adjudged ineffective upon the failure by the State to establish any of three prerequisites to waiver, viz., that the juvenile actually consulted with an attorney or an adult consulted was interested in the welfare of the juvenile, or that, if an adult other than an attorney was consulted, the adult was fully advised of the rights of the juvenile."
In discussing why an attorney or adult interested in the welfare of the juvenile must be present, the court in Dino stated:
"... the rights which a juvenile may waive before interrogation are so fundamental to our system of constitutional rule and the expedient of requiring the advice of a parent, counsel or adviser so relatively simple and well established as a safeguard against a juvenile's improvident judicial acts, that we should not pause to inquire in individual cases whether the juvenile could, on his own, understand and effectively exercise his rights.
* * * * * *
... Furthermore, whatever the background of the juvenile interrogated, assistance of an adult acting in his interest is indispensable to overcome the pressures of the interrogation and to insure that the juvenile knows he is free to exercise his rights at that point in time.
The presence of a parent, counsel, or other adult acting in the juvenile's interest at the interrogation may serve several significant subsidiary functions as well. If the juvenile decides to talk to his interrogators, the assistance of an adult can mitigate the dangers of untrustworthiness. With an adult acting in his interest present the likelihood that the police will practice coercion is reduced, and if coercion is nevertheless exercised the adult can testify to it in court. The presence of such an adult can also help to guarantee that the accused gives a fully accurate statement and that the statement is rightly reported by the prosecution at trial."
The juvenile in this case was provided with his probation officer of three years to serve as a concerned adult. The juvenile's mother was not available due to incarceration at the St. Gabriel Women's Correctional Facility, and his father was thought to possibly be in California, but his exact whereabouts were unknown. Young Belton lived with his grandmother when not in a juvenile shelter, but she was elderly and blind. Robert Belton, appellant's uncle, had previously served as an adult advisor for Michael, but no testimony indicated any attempt to contact him.
Appellant asserts that Ms. Hyams was not sufficiently independent to serve as someone interested in the child's welfare, and that even if she were to suffice as the adult counselor, that the consultation she provided was inadequate to comply with Dino and prevents finding a voluntary waiver of the juvenile's constitutional rights.
The burden is on the State to show that the waiver of rights was voluntary and in compliance with Dino. There are two cases which even address whether a parent is an adult "interested in the welfare of the juvenile." Dino, supra, at page 594. In State v. Braud, 475 So.2d 29 (La.App. 4 Cir.1985), writ denied, 480 So.2d 739 (La. 1986), that circuit examined a father appearing as a concerned adult for his mentally impaired son, saying:
"We may presume that from the filial relationship itself there is an interest of a father in his son's welfare. Mr. Braud's presence at the police station, his converstation *80 with his son, and his apparent desire to help him all confirm this interest."
Again, in State v. Smith, 431 So.2d 111 (La.App. 1 Cir.1983), writ denied, 434 So.2d 1092 (La.1983), the mother of the juvenile had been called to aid her son as a concerned adult. The First Circuit, while finding the mother sufficient, intimated that even a parent, while presumptively carrying out filial duties, may be found in some cases to lack the concern for the child's welfare necessary to advise the child genuinely. The court, in affirming the child's conviction as an adult for armed robbery, stated:
"The fact that Mrs. Smith, defendant's mother, went to the police station promptly after being notified by the police, shows her interest in her son's welfare. The relationship of mother and son in itself satisfies this requirement, unless there is definite evidence to the contrary."
Examining Ms. Hyams as a concerned adult, it appears that there are problems with her use in the protection of appellant's rights. It was the vehicle of Ms. Hyams' department that appellant had taken, although the trial court noted that it was not Ms. Hyams' personal vehicle. The trial court also based its ruling on the fact that probation officers'"sole business is to kind of look out for the welfare of those who are under their supervision," and that Ms. Hyams was knowledgeable about the law.
However, the presence of Ms. Hyams probably did little, if anything, to reduce the anxieties of the child in the coercive environment of interrogation in a police station. A probation officer is associated by many juveniles with enforcement of the law since probationary conditions require compliance with all laws. The Louisiana law defines a probation officer as a peace officer when engaged in duties related to the supervision of probationers. La.C. Cr.P. art. 899(F). Under La.C.Cr.P. art. 899(B), a probation officer can arrest a probationer without a warrant if he reasonably suspects a parole violation. Juvenile probation officers have similar powers under La.R.S. 13:1587. It is of some concern to us as to whether probation officers, even though exhibiting total concern for the rights of the child, can occupy the position of someone not a part of the adversarial system who can be of impartial guidance to the child in his decision to waive his constitutional rights.
The fact that the vehicle belonged to Ms. Hyams' department seems of little import to an adult accustomed to dealing with juveniles. Of greater import is the use of what would amount to a "professional concerned adult" who is intimately associated with law enforcement. The fact that parents were not available is possibly cause for going outside the family of the juvenile. On March 25, 1987, the child's uncle, Robert Belton, was the concerned adult for Michael when he gave statements on that date about the theft of a wallet Ms. Hyams knew of Robert Belton and his previous help with Michael as a concerned adult. With lack of an adult interested in Michael's welfare, the proper course to insure an impartial advisor to Michael would seem to be the appointment of an attorney by a court. This would insure against claims of collusion among those enforcing the laws and avoid the appearance of impropriety. The Supreme Court of Louisiana indicated a willingness to retreat from the Dino standard but has not done so. State v. Hudson, 404 So.2d 460 (La.1981). It seems that someone as inextricably associated with law enforcement as a probation officer does not fill the place of someone whose only reason for being present is to protect the interests of the child.
Also of importance in weighing the compliance with the Dino standards is the advice that Ms. Hyams gave young Belton. Ms. Hyams testified on cross-examination about the interaction she had with Michael as follows:
"Q. Did you inform Michael that it might be in his best interest that he not give a statement?
A. He was advised of his rights.
Q. Okay, I realize he was advised of his rights. My question is, did you go over it with him and tell him *81 that it might not be in his best interest to give a statement?
A. I did not try to advise him one way or the other. He was just informed of his rights, and his right to remain silent.
Q. Did you discuss his rights at all, just with him?
A. Yes."
Merely discussing the rights and not offering advice as to the exercise of those rights shows the conflict of interest that Ms. Hyams found herself in. The unwillingness to offer advice one way or the other illustrates that she may have lacked the concern for the child that the court in Dino probably anticipated in a concerned adult such as a parent or attorney. This is not to say that the adult must advise the child to remain silent. Indeed, in Hudson, supra, the defendant's parent, "after listening to the explanation of his rights, gave him the proper moral advice to tell truthfully all that he knew about the murder." The Hudson court stated in a footnote:
"In determining the admissibility of a juvenile's confession given after consultation with his parents, a court should not base its determination on whether a criminal defense attorney would have given different advice than the parents gave. If parents' advice to tell the truth requires exclusion of a juvenile's confession, then virtually no guilty juvenile will ever be convicted on a confession given after consultation with parents. The proper inquiry is whether the presence of and consultation with a concerned adult resulted in a voluntary and reliable statement. Moreover, Dino's requirement of the presence of an adult interested in the juvenile's welfare was certainly met in this case."
The perception of this child receiving advice from someone "on his side" is to allow clear thinking as to the proper course and ensure the voluntary nature of the waiver of his rights (should he choose to do so) by helping to "overcome the pressures of the interrogation." Dino, supra. In State In the Interest of Francois, 411 So.2d 588 (La.App. 1 Cir.1982), the First Circuit, in overruling a purported waiver by a juvenile, where the juvenile and his mother were explained their rights, found that, "the evidence reveals that Curtis did not actually consult with nor discuss with his mother whether these rights should be waived and whether he should make a statement to the officers."
In the present case, the lack of meaningful advice as to the exercise of Michael's constitutional rights may very well have affected Michael's ability as a juvenile to make a voluntary waiver of his rights.
This assignment of error has merit.
For the reasons assigned, the conviction is reversed, and the matter is remanded to the trial court for further proceedings in accordance with the view expressed hereinabove.
REVERSED AND REMANDED.
NOTES
[*] Judge G. William Swift, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The petition of April 28, 1987 charging defendant with unauthorized use of a movable, hit and run, and theft of the bicycle does not appear in the record to contain the verification required by La.CJ.P. art. 47(C). However, La.CJ.P. art. 47(D) states that substantial prejudice must exist for reversal and none is found to exist here.
[2] At various points in the record defendant is referred to as Michael Wayne Belton, Michael Dwayne Belton, and Michael Dewayne Belton. No prejudice has resulted and the error is harmless since there is no allegation that there exists a mistake as to the person referred to. See State v. Crowley, 475 So.2d 783 (La.App. 4 Cir. 1985).