KLEES, Judge.
The defendant, Henry Rankin, was arrested on March 17, 1982 and subsequently indicted with second degree murder, a violation of LSA-R.S. 14:30.1. He exercised his right to a jury trial and was found guilty as charged by a unanimous vote of the twelve member jury. Rankin was sentenced to imprisonment at hard labor for the rest of his natural life, the mandatory sentence under LSA-R.S. 14:30.1. Defendant now appeals his conviction and sentence on the basis of Four Assignments of Error.
*882 FACTS
On March 13, 1982, the defendant, Henry Rankin, was robbed after leaving a bar early in the morning. He testified that Michael Gardner (a/k/a Snow White), sprayed mace in his face, hit him with a pistol and took his wallet and his automobile. Rankin called the police and told the investigating officer (Officer Anthony De-lucca) that “the next time he seen the subject Snow, he was going to kill him.”
Later that day, at approximately midnight, Rankin testified that the victim came by the house where he was staying and made threats against him and another occupant of the house.
Two days later, on Monday morning, March 15, 1982, the defendant informed his employer, Andrew Kessler, that he needed to obtain a new driver’s license from the Motor Vehicle Department located in the State Building. Before leaving work, Rankin took a Smith and Wesson .357 magnum from the desk in Kessler’s office “to protect himself.” The defendant left Delta Machine Manufacturers at 10:30 a.m. and began walking toward his residence on Florida Avenue in order to change out of his greasy work clothes. He saw the victim and Curtis Bichman talking in the street at the intersection of Gallier and Law Street. According to Rankin, the victim reached inside his shirt, prompting Rankin, believing that Gardner had a weapon, to pull out his revolver and fire toward the victim. Both subjects hid between parked cars and Rankin then chased Gardner, shot him as he was running away, then shot him a second time when he was lying on the ground. The defendant testified that the victim shot once and had a pistol in his hand when he fell to the ground.
Curtis Bichman was an eyewitness to these events and testified that the victim did not see the defendant as he approached, but when told by Bichman that Rankin was near, he (Gardner) told the defendant that he could explain. Bichman warned the victim that he should run. He did so after Rankin shot at him. Bichman testified that Rankin chased the victim and shot him as he was running away, then stood over him and shot him again as he was lying on the ground. Bichman stated that he was hiding in nearby bushes when the shooting occurred, but begged Rankin not to shoot Gardner a second time. Bichman also stated that the victim never had a gun or shot at the defendant. The defendant walked away, and after changing his clothes, returned to work at approximately 12:30 p.m.
On Wednesday, March 17, 1982, Rankin confessed to his employer, Andrew Kes-sler, that he had shot the person who had robbed him. Kessler testified that the defendant admitted searching for Gardner, lying in the bed of a pickup truck waiting for him and then shooting him twice, once while the defendant was standing over the victim as he lay on the ground. The defendant told Kessler that he returned the weapon with four spent shells to the desk drawer. Kessler also testified that Rankin made no mention that the victim had a weapon or that Gardner had previously threatened him. After confessing to Kes-sler, the defendant voluntarily surrendered to police at Central Lockup.
Lieutenant Ellis Williams responded to the call of the shooting and arrived at Gallier and Law Streets approximately two to three minutes after receiving the call. Williams found the victim lying face down in a pool of blood in a courtyard between two buildings. Williams testified that no weapon was ever found on the crime scene. Detective John Dillmann conducted the follow-up investigation and interviewed Curtis Bichman. Bichman selected a photograph of the defendant at a photographic lineup conducted by Dillmann on April 1, 1982 in the rear of his police vehicle. Dillmann also received a Smith and Wesson .357 magnum from Andrew Kessler which was subsequently tested by Officer Otho Stubbs and found to be the murder weapon.
Dr. Paul McGarry, a pathologist, conducted an autopsy on the victim and determined that Gardner was killed by two gunshot wounds from the back. The second *883 wound was inflicted from above the victim, probably when he was lying on the ground.
A. Errors Patent
A review of the record for errors patent indicates that the trial court did not specify that the defendant’s sentence must be served without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:30.1 requires that the defendant be sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. In this respect, the sentence is “unlawfully lenient.” Nonetheless, this defect in the sentencing was not properly raised as an issue in the trial court and is not now subject to appellate review.
The Louisiana Supreme Court has recently held that “when a defendant alone appeals and the record contains a patent error unfavorable to the defendant, an appellate court should recognize and correct the error. However when a defendant alone appeals and the record contains a patent error favorable to the defendant the appellate court should ignore the error, unless the prosecution, having properly raised the issue in the trial court, has sought appellate review.” State v. Jackson, 452 So.2d 682 (La.1984).
B. Sufficiency of Evidence
The defendant was convicted of second degree murder, defined in pertinent part, as “the killing of a human being: (1) when the offender has a specific intent to kill or to inflict great bodily harm ...” LSA-R.S. 14:30.1.
Evidence presented at trial established that the defendant shot the victim in the back twice with a .357 magnum pistol, once while standing over the victim as Gardner lay on the ground. The defendant’s specific intent to kill may be inferred from these circumstances and actions by Rankin. See State v. Boyer, 406 So.2d 143 (La.1981).
Under Jackson, any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found in this case that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982); State v. Brown, 340 So.2d 1306 (La.1976).
C. Assignments of Error 1 and 2
By these assignments, the defendant contends that the trial court erred in preventing the defense from showing the “bias or interest” of Curtis Bichman, the only eyewitness to testify at trial. Rankin argues that the defense was attempting to elicit information from Bichman regarding a promise of leniency from the district attorney in a case pending against Bichman, if Bichman testified against Rankin.
LSA-R.S. 15:492 provides:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish the same.
In State v, Brady, 381 So.2d 819 (La.1980), the defense counsel attempted to cross-examine the victim of the alleged crime about whether he had “made a deal with the D .A.”. concerning a previous arrest for carrying a concealed weapon pending with the District Attorney in return for his testimony. The court held that the trial court committed error by not allowing the cross-examination because it might tend to show that the District Attorney’s office had leverage over the witness as a result of the pending charge. See also State v. Robinson, 337 So.2d 1168 (La.1976); State v. Senegal, 316 So.2d 124 (La.1975).
In this present case, the trial court sustained the district attorney’s objection to the questions asked by the defense attorney regarding the charge presently pending against Bichman. However, the defense attorney was then permitted to *884 question Bichman regarding any “bargain” between himself and the District Attorney. Additionally, the prosecutor asked Bichman if any promises were made by the District Attorney if Bichman testified and Bichman answered, “No.” Thus, although the trial court sustained the state’s objection to one question, the defense attorney was permitted to thoroughly question Bichman about any promises made by the district attorney.
The defendant also objects to the court’s ruling prohibiting the introduction of preferred testimony of Paul Weidenfeld (Bichman’s attorney). Under LSA-R.S. 15:492, a defendant may attempt to impeach a witness who denies favorable state treatment by examining “any other witness” to establish the witness’ bias or interest. State v. Franks, 363 So.2d 518 (La.1978). Thus, the defendant should have been permitted to question the witness’s attorney, or the district attorney to establish Bichman’s bias or interest. However, Paul Weidenfeld’s knowledge of any promises offered by the state to his client would be considered privileged information. See State v. Franks, supra. The defense counsel could have questioned the district attorney, the only other witness to a possible plea bargain arrangement, but the district attorney was not called as a witness by the defense. Although the trial court refused the proffer of evidence for the reasons of potential conflict of interest and relevancy, it does not appear that this testimony would be admissible because of the attorney-client privilege. This assignment is without merit.

Assignment of Error 3

By this assignment, the defendant maintains that the trial court erred in permitting the state to introduce testimony concerning the defendant’s confession after the state had denied the existence of such a confession, and then had filed an inadequate “768 notice.”
For the following reasons we conclude that this assignment of error is without merit. In his prayer for Oyer the defendant requested “Disclosure of the existence of any oral statements, admissions and/or confessions of any nature made by the defendant which the state intends to offer in evidence at trial, including res gestae statements.” The State responded that there were no such statements. On December 7, 1982, the minute entry reflects that the State filed with the Court and the defense a Notice of Intention to Use Incul-patory Statements and to amend paragraph 7(a) of its answer to the Bill of Particulars. The defense objected at that time and moved for a continuance. The objection was overruled, but a continuance was granted until the following day. Thereafter, the record does not reflect any further objection made to the inculpatory statement made by the defendant to his employer.
The defense was granted a continuance, as requested, in compliance with C.Cr.P. Art. 729.5, but they failed to request any further relief as provided in that statute. See, State v. Bonanno, 373 So.2d 1284, 1287 (La.1979). The defense did not object to the statement in question at any time during the trial and they may not now raise this as error- on appeal. C.Cr.P. Art. 841.

Assignment of Error ⅛

By this assignment, the defendant contends that the trial court erred in failing to instruct the jury as to the mandatory penalty for second degree murder.
When the penalty to be imposed is a mandatory one, the trial judge must inform the jury, on timely, written request of the defendant, of the penalty and to permit defense counsel to argue the penalty to the jury. State v. Hooks, 421 So.2d 880 (La.1982); State v. Washington, 367 So.2d 4 (1978). Defense counsel, however, did not request that the trial court read the second degree murder and manslaughter statutes to the jury until after the jury had retired to deliberate.
The Code of Criminal Procedure provides the defendant with two opportunities to insure that the mandatory penalty *885 for second degree murder is described to the jury. The trial judge must provide a written copy of his charges and read it to the jury if requested by the defendant prior to the swearing of the first witness. LSA-C.Cr.P. Art. 801. Nothing in the record shows that such a request was made.
Additionally, LSA-C.Cr.P. Art. 807 provides that counsel may submit, prior to argument, special written charges to the jury. Counsel for the defendant failed to submit a special charge describing the mandatory penalty for second degree murder.
Therefore, defense counsel’s failure to either timely request the trial court’s written general charge or to timely provide his own special charges prevents his objection to the charge as given. State v. Chapman, 410 So.2d 689 (La.1981) (case remanded on other grounds). This assignment is without merit.
Accordingly, for the reasons expressed above the defendant’s conviction and sentence are hereby affirmed.
AFFIRMED.