639 So.2d 323 (1994)
STATE of Louisiana
v.
Tony GILES a/k/a Thomas Giles.
No. 93-KA-0103.
Court of Appeal of Louisiana, Fourth Circuit.
June 15, 1994.
*324 Harry F. Connick, Dist. Atty., Parish of Orleans, Susan M. Erlanger, Asst. Dist. Atty., Parish of Orleans, New Orleans, for the State of LA.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for Tony Giles a/k/a Thomas Giles.
Before WARD, WALTZER and LANDRIEU, JJ.
*325 WARD, Judge.
The Orleans Parish Grand Jury indicted Tony Giles, charging him with the first degree murder of Maria Elmore, allegedly committed during an armed robbery. A petit jury found him guilty as charged, but did not recommend the death penalty. The trial court sentenced him to serve life in prison without benefit of probation, parole or suspension of sentence.
Giles appeals, arguing constitutional issues and trial errors which he claims led to an erroneous jury verdict. We do not find merit in any of his arguments, and we affirm.
Giles raises two constitutional issues. He claims the evidence does not support the verdict of first degree murder and violates due process. He also claims racial discrimination in jury selection by use of peremptory challenges.
Giles's due process argument relates to the sufficiency of the evidence and the Jackson standards of the United States Supreme Court which requires an appellate court to consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
Tony Giles was a boyfriend of Maria Elmore for more than 2 years. They broke up several months before she was murdered, but they saw each other occasionally before that. In January 1990, when Maria failed to return from a date with Giles, Ronald Hilliard, her brother, went to her apartment to look for her. Hilliard found tape recordings of a telephone conversation between Giles and Maria wherein Giles described several possible ways he would kill Maria. Hilliard notified police that his sister was missing.
On January 15, 1990, Jefferson Parish Deputy Sheriff Martha Pernia was called to investigate a homicide. She found Maria Elmore's body in a culvert under the Earhart Expressway overpass. Several drag marks indicated that she had been dragged into the culvert. Sheriff Pernia checked police reports for missing persons fitting the description of the victim and contacted Ronald Hilliard who identified Maria's body.
Hilliard gave Sheriff Pernia the tape recording of the telephone conversation and identified the voices on the tape as those of Tony Giles and his sister. Sheriff Pernia obtained an arrest warrant for Giles, and listed the victim's car as missing and involved in a homicide.
On January 23, 1990, Baton Rouge police observed Giles run a stop sign, and after a 115 mile per hour chase, they arrested Giles who was driving Maria Elmore's car. Baton Rouge police learned the car was listed as missing, searched it, finding a .38 caliber casing, Maria's drivers license, and several of her credit cards. Baton Rouge police notified Jefferson Parish authorities, and shortly thereafter Detective Pernia took Giles into custody in Baton Rouge.
Sheriff Pernia informed Giles of his "Miranda" rights before Giles gave her a statement which she recorded. According to Giles, Maria Elmore's death was accidental. He stated she pulled a gun on him, and it discharged as he was trying to take it from her.
The autopsy showed that Maria Elmore died from a single .38 caliber gunshot wound to the head. The bullet passed through the top part of the ear and entered the head right behind the ear. The bullet was recovered underneath the scalp. When Maria's body was found it had two small abrasions on her right hand and a small abrasion on her left knee but there were no marks to indicate a violent struggle.
Other witnesses implicated Giles. Carla Mims testified that she saw a gun in Tony Giles' sock two weeks before the murder and that Giles told her he planned to kill Maria and two other people, then he would kill himself.
Sandra Gibson testified she dated Tony Giles after the murder. She said Giles gave her credit cards belonging to Maria Elmore which both used on several occasions in Baton Rouge.
*326 Maria's neighbor, Sheila Williams, testified that she, Maria and Giles were together the night of the murder. She saw Giles and Maria leave Maria's apartment in her car to go to a movie. Williams noted that Giles had a gun in a paper bag and that Maria was wearing a Rolex watch, a silver necklace and earrings.
Giles testified that Maria was jealous of his relationship with Carla Mims, and tried to put him out of her car the night she died. She told him, "If you don't get out of the car I'm going to shoot you" and pulled the gun on him. He tried to take the gun from her, there was a struggle, and the gun went off killing her. This occurred in Orleans Parish, although Maria's body was found in Jefferson Parish.
The evidence is not only sufficient under Jackson, it is overwhelming under any standard, and complaints of due process violations have no merit whatsoever.
In another constitutional issue, Giles argues that the jury selection process was constitutionally objectionable, contending the State used its peremptory challenges to exclude members of a class who have a right to jury service. Giles argues that the State failed to rebut a presumption of purposeful discrimination through use of its peremptory challenges, relying on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and State v. Collier, 553 So.2d 815 (La.1989). Giles made a Batson objection during the selection of the petit jury when the State peremptorily excused six prospective petit jurors which appellate counsel says were black.
Before a trial court considers a Batson challenge, an accused is required to establish a prima facie case of purposeful State discrimination by showing that pertinent circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members of a cognizable racial group from the jury solely on the basis of race. Batson; Collier, supra. Upon a prima facie showing of discrimination, the burden then shifts to the State to come forward with an explanation for challenging the jurors which would show race was not the only factor. While that explanation need not rise to articulation of reasons that would support a challenge for cause, a prosecutor does not meet that burden of showing the presence of other factors by merely stating that the excused jurors would be partial to the defendant because of their shared racial identity. State v. Knighten, 609 So.2d 950 (La.App. 4th Cir.1992). The explanation must be one which is clear, reasonably specific, legitimate, and related to the particular case. Collier, supra at 820. However, the ultimate burden of persuasion is on the defendant. State v. Thompson, 516 So.2d 349 (La.1987); cert. den., Thompson v. Louisiana, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). The trial court's initial determination of whether a prima facie case has been made is entitled to great weight. Batson, supra.
In this case after Giles made a Batson challenge, the trial court requested that the prosecutor give reasons for his peremptory challenges without first determining whether Giles made a prima facie showing of discrimination. After the State gave its reasons, the trial court did not directly rule on the merits of Giles's Batson challenge. Instead, the trial court ordered the trial to begin.
This Court has previously held that the trial court need not find a prima facie case before the trial court requires the prosecution to give its reasons for its peremptory challenges. As this Court observed, this procedure may be quite expeditious because, in the event an appellate court disagrees with the trial court and determines that a prima facie showing was made, the prosecutor's explanation would be in the record, and remand for an explanation would be avoided. State v. Granier, 592 So.2d 883 (La.App. 4th Cir.1991), writ denied, 600 So.2d 1334 (La. 1992). In this case, therefore, we can assume the trial court did not find there was a prima facie showing of racial discrimination because he did not sustain Giles's challenge, although it followed the procedure approved in Granier, supra.
We, however, are unable to say if the trial court erred by not finding Giles made a prima facie showing of discrimination because the record does not indicate the racial *327 composition of the jury venire or of those jurors finally selected to hear the case, or even the race of the jurors challenged, although we may assume they were black. Additionally, Giles's trial attorney, an experienced trial attorney of 20 years, did not object to proceeding without a ruling from the court. In the absence of an objection, there is nothing to review; and this explains the absence of information as to the racial characteristics of jurors and prospective jurors.
In one particular instance, however, the State's questioning and its reasons for challenging a juror deserves careful consideration. Darrel Esnault was struck because he exhibited several characteristics which could suggest he might identify with the defendant. The prosecutor said he struck Esnault because he "was unemployed and he was the approximate age and race of the defendant. He may identify with the defendant."
While the prosecutor candidly said race was a factor, he gave other reasons for concluding the juror might identify with the defendant, it was not the sole reason for striking Mr. Esnault. The record indicates that the prosecutor peremptorily challenged other unemployed prospective jurors without defense objection. Additionally, race did not play any part in this crime, and it probably would not be an important factor in jury selection where Giles is an African American and so was the victim, Maria Elmore.
This presents a close question, but since Giles's counsel did not pursue a Batson objection, and because we are unable to determine the racial composition of the petit jury, we do not find error that would justify reversal of Giles's conviction. State v. McNeil, 613 So.2d 752 (La.App. 4 Cir.1993) writ granted in part, vacated in part, 623 So.2d 1320 (La.1993).
In addition to arguing constitutional issues, Giles argues that several trial errors led the jury to reach an erroneous verdict. Each of those allegations were considered, but only those that follow are worthy of discussion.
He contends the trial court's failure to charge the jury on circumstantial evidence is a violation of C.Cr.P. art. 802 which requires the trial court to charge the jury on the law applicable to the case. He contends that his conviction is based upon circumstantial evidence as there were no witnesses to the alleged shooting and robbery. This argument by Giles overlooks both the tape recording of his intent to kill Maria, a rare example of direct evidence of an intent to kill, and it overlooks his own confession and trial testimony which provides direct evidence that he shot her, although he has an explanation of how the shooting occurred. Thus, there is direct as well as circumstantial evidence here, and the circumstantial evidence instruction is only applicable when a case rests solely and exclusively on circumstantial evidence.
Further, while defense counsel orally requested a special charge on circumstantial evidence, he did not object to the trial court's denial of his request. C.Cr.P. art. 801 states that "a party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." A defendant's failure either to timely request the trial court's written general charge or to timely provide his own special charges prevents his objection to the charge as given. State v. Chapman, 410 So.2d 689 (La.1981); State v. Rankin, 454 So.2d 880 (La.App. 4th Cir.), writ granted 458 So.2d 467 (La.1984) and writ denied 462 So.2d 656, affirmed, 465 So.2d 679 (La.1985).
In his next assignment Giles argues the trial court erred by refusing to give a special charge on accidental shooting which he had requested. The trial court denied the defendant's request after finding the instruction to be unnecessary and confusing to the jury.
The trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors reasonably could infer from the evidence. C.Cr.P. art. 807; State v. Johnson, 438 So.2d 1091 (La.1983). C.Cr.P. art. 807 further provides that a timely "requested special charge must be given to the jury if it *328 does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given." The refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. C.Cr.P. art. 921; State v. Marse, 365 So.2d 1319 (La.1978); State v. Vergo, 594 So.2d 1360 (La.App. 2nd Cir.1992), writ denied, 598 So.2d 373 (La.1992).
The special jury charge on accidental shooting submitted by the defendant stated that:
[d]efendant's defense is that the deceased met her death accidentally and that the defendant did not intend injury or death to victim. This defense necessarily denies that the killing was intentional. But this defense does not shift to a defendant this burden of proving that the homicide was caused by an accident. On the contrary, when the defense of accidental shooting is set up, according to the general rule, the burden rests upon the State to show that the killing was willful and intentional. State v. Graffam [202 La. 869] 13 So.2d [249] (1943).
As previously stated, Giles testified the shooting was accidental, that Maria pulled a gun on him when he refused to get out of her car and that the gun accidentally fired when he tried to take the gun away from the victim. Thus, there was evidence introduced at trial supporting the defendant's defense of accidental shooting, and Giles's suggested charge was correct. Nonetheless, failure to give those instructions is not error if they are reasonably included in the trial court's charge, and in this case the trial court's general instructions to the jury, defining first degree murder, the burden of proof, and specific intent to kill or inflict great bodily harm, included the essence of the suggested charge; it was sufficient to inform the jury that the defendant did not have the burden of proving that the victim's death was accidental.
Giles in a pro se brief argues that the trial court's instructions on reasonable doubt were confusing and in some places, conflicting. His counsel sought a mistrial as to part of the reasonable doubt charge given to the jury but did not state the basis for either the motion for a mistrial or the objection, and Giles is limited on appeal to the grounds for objection articulated at trial. State v. Jackson, 450 So.2d 621 (La.1984). The colloquy between the trial judge and defense counsel does not even suggest what the basis may have been. Thus, even assuming that defendant has based his assignment of error on that portion of the charge objected to by defense counsel, review of the issue on appeal is precluded as defendant failed to articulate a basis for his request for a mistrial. C.Cr.P. art. 801; State v. Jackson, supra. Nevertheless, we have reviewed the charge and do not find it confusing or conflicting.
In another assignment, the defendant argues that his trial counsel rendered ineffective assistance of counsel. Generally, the issue of ineffective assistance of counsel is addressed by an application for post conviction relief filed in the trial court where a full evidentiary hearing on the issue can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 619 So.2d 1102 (La.App. 4th Cir.1993), writ denied, 625 So.2d 173 (La.1993). However, when the appeal record contains enough evidence upon which to base a ruling on the issue, the appellate court will make a determination in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); State v. Johnson, supra.
A defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). "Such performance is ineffective when it can be shown that counsel made errors so serious that he was not functioning as the `counsel' guaranteed by the Sixth Amendment." Bell, at 969. Counsel's deficient performance will have prejudiced the defendant if it can be shown that counsel's errors were so serious as to deprive the defendant of a fair trial, one whose result is reliable. Strickland; Bell; State v. Crowley, 475 So.2d 783 (La.App. 4th *329 Cir.1985). To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 694, 104 S.Ct. at 2068. A defendant must make both showings to prove that counsel was so ineffective as to require reversal. Considering the above, the record does not support Giles's argument that he suffered ineffective assistance of counsel. For the foregoing reasons we affirm the conviction and sentence.
AFFIRMED.