543 So.2d 965 (1989)
STATE of Louisiana
v.
Kerry BELL.
No. KA-8792.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
Harry F. Connick, Dist. Atty., Sandra Pettle, Asst. Dist. Atty., New Orleans, for plaintiff.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BARRY, LOBRANO and WILLIAMS, JJ.
BARRY, Judge.
The defendant was convicted of aggravated battery, La.R.S. 14:34, and sentenced as a multiple offender to fifteen years at hard labor without benefit of parole, probation or suspension of sentence.
There are four arguments on appeal. Defense counsel assigns two errors and the defendant filed a pro se brief with three errors: (1) (Pro Se # 3) (Counsel's Brief *966 # 2) the trial court admitted testimony as to several unrelated incidents; (2) (Pro Se # 1) the conviction was based on evidence and testimony the State knew was perjured; (3) (Counsel's Brief # 1) the sentence is excessive; (4) (Pro Se # 2) ineffective assistance of counsel.

FACTS
Judith Legendere, Steve Riley's girlfriend and the mother of his children, testified that on the Saturday before Easter, April 21, 1984, she had an argument with her next door neighbors, the defendant's family. That evening she told Riley about the argument and she thought he went next door to discuss the problem. Janice Bell, the defendant's sister, claimed Judith started the altercation by cursing.
Judith said on Easter morning Riley drove her to church and she met him at his mother's house that afternoon. Riley went outside and Judith saw the defendant's sister, Barbara, and his niece, Natalie, standing at the end of the driveway. She did not hear the gunshot.
Riley testified that he did not talk to the Bell family Saturday night, but did so Sunday morning and they resolved their differences. He and his brother Larry were sitting on his mother's porch steps Easter afternoon, his brother went upstairs and the defendant showed up. Riley gave the defendant $1.00 to buy cigarettes and when the defendant returned, Riley gave him a couple of cigarettes and they talked for about twenty minutes. Michael Boltan, a friend, drove up and Riley walked up to the car to talk. Riley testified that he turned around just as the defendant pulled a gun. Riley put his hand toward the barrel and a bullet struck his hand.
Michael Boltan, who knew the defendant and Riley when they were growing up in the project, corroborated Riley's testimony. He said that on Easter afternoon he stopped his car in the driveway of Riley's mother's home. The defendant and Riley were having "words." Riley walked to Boltan's car and Boltan suddenly heard shots and saw a gun in the defendant's hand. Boltan noted that Riley had been shot in the hand. He claimed Riley did nothing to provoke the shooting. Boltan took Riley to Charity Hospital, then told Riley's mother and drove Judith to the hospital. Boltan said he felt no animosity toward the Bell family and he did not want to testify.
Janice Bell told a different story. She said that early Easter afternoon she was standing inside her screen door on the porch she shared with Judith and Riley, Melvin Sartin, a neighbor and alleged troublemaker, called Riley outside. When Riley returned to the porch, he and Janice Bell exchanged harsh words. She told her brothers Fred and Kerry about the heated exchange. About 4:00 or 4:30 p.m. she and the defendant went to Riley's mother's house and were standing in her driveway. The defendant and Riley started talking, then fighting and wrestling. One or two shots were fired and she and the defendant ran away.
The testimony of Melvin Sartin, Judith's neighbor, placed a gun in the defendant's possession on Easter Sunday. Sartin testified that between noon and 1:00 p.m. he saw the defendant and Barbara Bell outside his bedroom window. Barbara took a gun out of a brown paper bag and said: "[I]f he give you any problem, you shoot him." Sartin knew she was referring to Steve Riley. When Barbara noticed Sartin she included him in the threat. Sartin testified he had known the defendant since childhood and was acquainted with Judith and Riley.
Sartin also testified about his other problems with the defendant's family. He said the defendant's other sister, Janice, stabbed his daughter in the leg years before and pleaded guilty to a charge of aggravated battery. His problem with the Bell family had begun when his daughter was a State witness in juvenile court.
Barbara Bell, the defendant's sister, denied giving her brother a gun. She said Sartin had a vendetta and he caused her arrest in the past for intimidation of a State witness. She claimed she had no prior convictions.
*967 Janice Bell admitted she pleaded guilty to aggravated assault and battery of Sartin's daughter, but claimed she did not stab Barbara Sartin. Janice claimed she pleaded guilty to get probation. She also noted the longstanding feud between her family and the Sartins. Janice admitted her prior guilty plea to intimidation of a State witness, Sartin's daughter.
Riley testified that he feared the defendant after the shooting. The defendant would show up at job sites where Riley was working. The defendant always carried a brown paper bag (which Riley thought contained a pistol). One day not long after Easter when the defendant made a motion with the bag, Riley grabbed a gun (not his) from inside his truck and shot the defendant. Riley testified that he had no criminal conviction and was never charged with shooting the defendant.
Officer August Santosuosso, who went to Charity Hospital relative to the shooting, and arresting officer David Carter also testified.

ARGUMENT # 1
Defense counsel argues the trial court erroneously admitted testimony relative to: incidents involving the defendant's family members which did not involve the defendant or Steve Riley, i.e., the incident between Janice Bell and Sartin's daughter years earlier, the altercation between Judith and the Bells the day before Easter, the incident outside the courtroom involving Sartin and the Bell sisters. Sartin also testified that Barbara Bell threatened him prior to the shooting.
The defendant argues that evidence of his bad character and that of his entire family was allowed in violation of La.R.S. 15:481 by allowing testimony as to those incidents.
Judith Legendere recounted the Saturday altercation and Sartin testified about Barbara Bell's threat without objection. The defendant cannot complain absent an objection during trial. La.C.Cr.P. Art. 841; State v. Hawkins, 496 So.2d 643 (La.App. 1st Cir.1986), writ denied 500 So.2d 420 (La.1987).
Circumstances surrounding several of the incidents were also brought out during defense questions of State witnesses.
On cross-examination Janice Bell was questioned about prior convictions without objection. She admitted that she pleaded guilty to aggravated battery of Sartin's daughter and to intimidation of a State witness. La.R.S. 15:495 authorizes questions of a witness about prior convictions to impeach credibility. State v. Truitt, 500 So.2d 355 (La.1987); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987). That testimony was admissible for impeachment purposes.
Orleans Parish Criminal Sheriff Deputy Eugene White testified about an altercation in the courthouse. Deputy White, who was assigned to Section B of the Criminal Courts Building, witnessed a disturbance in the hallway outside the courtroom during trial. Over objection and after a jury instruction as to the limited value of the testimony to show bias on the part of certain witnesses, he testified. Deputy White said he saw a group of people talking loudly which included two ladies. Janice Bell spit at Sartin and took off her shoe and went at him. As Sartin backed off the other sister went after him with a pocketbook. Deputy White intervened. Sartin said he was a witness against Janice Bell's brother. White told Janice to wait down the hall and she "kept getting smart." Janice was placed in a separate room. Janice denied spitting on Sartin and claimed she took her shoe off because her foot had fallen asleep.
La. 15:492 provides:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
The bias must be personal against the defendant and not general in nature. State v. Williams, 445 So.2d 1171 (La.1984); State v. Raymond, 447 So.2d 51 (La.App. *968 1st Cir.1984), writ denied 449 So.2d 1347 (La.1984).
The testimony about the altercation related to the feud between the Sartin and Bell families and did not establish bias against the defendant. The trial court erred in allowing the testimony; however, that was not reversible error. The trial judge admonished the jury that the testimony was to show bias of the defense witnesses, not the defendant's guilt or innocence.
We are satisfied that questioned evidence did not influence the jury or contribute to the verdict. Riley, the victim, and Boltan, a disinterested party, testified that the defendant shot Riley. The error was harmless. La.C.Cr.P. Art. 921; State v. Banks, 439 So.2d 407 (La.1983).
This argument lacks merit.

ARGUMENT # 2
The defendant contends the State allowed false testimony and contradictory and/or inconsistent statements to be presented to the jury and was denied a fair trial.
The defendant points to Officer Santosuosso's initial police report which states that Riley said he fought with the defendant over a gun and the defendant shot at him twice. The arrest warrant application also states that the defendant shot twice. Riley's alleged perjured testimony indicates he did not wrestle with the defendant and one shot was fired. Later Riley testified that one or two shots were fired and another shot was fired as he ran away. The defendant notes that Boltan said he heard one shot. The discrepancy, partially reconciled by Riley's later testimony, does not prove perjury.
The defendant also claims Sartin perjured himself. Sartin testified that he did not definitely know whether the defendant had a criminal record, but later named the Assistant District Attorney who handled a prior case involving the defendant's aggravated battery on him. The defendant's argument that the State knowingly used the contradictory testimony has no merit.
The State also impeached Sartin's testimony (concerning his call to the District Attorney's Office within a day or two of the shooting) by calling A.D.A. Jim Williams to the stand. Williams did not remember Sartin's call right. He said the case was assigned to him May 7 or 8, 1984, long after Sartin claimed they spoke. Williams testified that he did not speak to Sartin until after May 15, 1984.
The defendant also alleges that all of Sartin's testimony was perjured because of the feud between the families. Credibility is to be determined by the jury.
This assignment lacks merit.

ARGUMENT # 3
Defense counsel claims the sentence is excessive. The defendant was sentenced to fifteen years at hard labor without benefit of parole, probation or suspension of sentence. As a second offender, the maximum sentence would have been twenty years pursuant to La.R.S. 14:34 and R.S. 15:529.1.
La. Const. Art. I, § 20 prohibits the imposition by law of excessive punishment. The imposition of a sentence, although within the statutory limits, may violate a defendant's constitutional right against excessive punishment. State v. Cann, 471 So.2d 701 (La.1985); State v. Telsee, 425 So.2d 1251 (La.1983). A punishment is considered constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Telsee, supra; State v. Sims, 410 So.2d 1082 (La.1982).
The trial court's reasons in imposing sentence, as required by La.C.Cr.P. Art. 894.1, are an important aid to this Court in reviewing an allegedly excessive sentence. State v. Sepulvado, 367 So.2d 762 (La. 1979); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir.1986), writ denied 503 So. 2d 13 (La.1987). A trial judge is given wide discretion in the imposition of a sentence. The sentence should not be set aside as excessive in the absence of a manifest *969 abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982).
The record should indicate that the trial court has considered not only the circumstances militating for incarceration, but also any mitigating factors. State v. Walker, 414 So.2d 1245 (La.1982); State v. Guiden, 399 So.2d 194 (La.1981), cert. denied 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed. 2d 305 (1982).
The trial judge declared that he had reviewed the sentencing guidelines of La.C. Cr.P. Art. 894.1 and did not find a mitigating circumstance. The court noted that aggravating circumstances did apply. The judge expressed a belief that there would be an undue risk that the defendant would commit another crime during a suspended sentence or probation. He said the defendant needed correctional treatment and a custodial environment.
After being advised of his rights, the defendant pleaded guilty to being a second offender. Prior to sentencing the judge stated that the defendant was a violent person who could not restrain himself. He stated his belief that the defendant would use violence to get whatever he wanted and thought it was important to keep him out of society for a long time.
The trial judge does not have to recite each aggravating and mitigating circumstance. The record need only reflect that he adequately considered the factors. State v. Davis, 448 So.2d 645 (La.1984). We find the trial court complied with La.C. Cr.P. Art. 894.1.
Once compliance is found, we focus on whether the judge abused his much discretion. State v. Smack, 425 So.2d 737 (La. 1983). The circumstances of the crime, the character of the defendant, and the reasons are considered. State v. Cox, 369 So.2d 118 (La.1979); State v. Sepulvado, supra. The defendant's punishment is also compared with sentences imposed in other cases involving similar offenses. State v. Tompkins, 429 So.2d 1385 (La.1982) (on rehearing); State v. Green, 418 So.2d 609 (La.1982).
This court has affirmed an eighteen year enhanced sentence when the defendant (charged with attempted second degree murder) shot the victim four or five times. State v. Melancon, 531 So.2d 1090 (La.App. 4th Cir.1988), writ denied 536 So.2d 1234 (La.1989). Other circuits have approved up to an eighteen year enhanced sentence where a defendant (originally charged with attempted second degree murder) struck his victim and stabbed him with a screwdriver during a robbery attempt. State v. Chaney, 444 So.2d 266 (La.App. 1st Cir. 1983).
The cases cited by the defense are not relevant because those defendants were first offenders.
This assignment lacks merit.

ARGUMENT # 4
The defendant claims he had ineffective assistance of counsel because his counsel: did not discover alleged inconsistencies in Riley's statements, he could have learned about Sartin's extreme bias against the defendant, and he contends he wanted to testify but his attorney strenuously advised against it.
In order to substantiate a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and the likelihood that the deficiency prejudiced the defendant. Such performance is ineffective when it can be shown that counsel made such errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. The defendant must show that counsel's errors were so serious that he was deprived of a fair trial. The defendant must make both showings in order to prove that counsel was so ineffective that reversal is required. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Copeland, 530 So.2d 526 (La.1988); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986); State v. Crowley, 475 So.2d 783 (La.App. 4th Cir.1985).
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief filed initially in the *970 trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986).
A full review cannot be made in the absence of a hearing. We decline to consider this assignment.

ERROR PATENT
The record shows that the defendant was sentenced to hard labor without benefit of parole, probation or suspension of sentence. Under La.C.Cr.P. Art. 893 he is ineligible for suspension of sentence because he is a second offender and the crime involved a dangerous weapon. La.R.S. 14:34 provides that the sentence for aggravated battery is imprisonment with or without hard labor for not more than ten years and/or a fine of $5,000. Because the statute does not prohibit parole, the defendant's enhanced sentence should not have prohibited parole. His parole eligibility is to be determined by the Department of Corrections pursuant to La.R.S. 15:574.4.
The defendant's conviction is affirmed. His sentence is amended to delete the denial of parole and is affirmed as amended.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.