ARMSTRONG, Judge.
The defendant, Noel Page, was charged with the offense of manslaughter. After a trial, a twelve-member jury found him guilty as charged. He was sentenced to serve twenty-one years at hard labor.
The record reflects that on November 22, 1989, the defendant was living with the family of Tiffany Edgarson, his ex-girlfriend. On that day, he and Tiffany’s brother Chris had gone job hunting and had returned to the Edgarson’s house at 1427 Arts Street. Tiffany, her new boyfriend Irwin LeGarde, and a baby were at the house. Soon after Chris and defendant arrived, Chris, Tiffany, and LeGarde left the house to get some food. When they returned, defendant was talking on the telephone. Tiffany indicated she wanted to use the telephone, and there was some conflicting testimony as to whether she guessed defendant had been talking with another girl. In any event, she hung up the telephone, cutting off defendant’s call. Tiffany testified that Page became mad and hit her. Defendant testified that Tiffany screamed at him for calling another girl from her house. Defendant testified that Tiffany then began hitting him, and he grabbed her arms and pinned her down on the bed to keep her from hitting him.
While defendant and Tiffany were engaged in this conflict, LeGarde emerged from another room and told defendant to leave Tiffany alone. Defendant in essence told him to mind his own business, and LeGarde suggested that they take the matter outside. Tiffany testified that the two boys, (both were seventeen), then went outside and began fighting. Defendant testified that LeGarde hit him on the way out the door and he fell down the stairs. This statement was confirmed by Brian Bell, *172 who also happened to be at the house. Tiffany denied that this happened and stated that defendant threw the first punch. In any event, defendant and LeGarde then fought outside. Bell and defendant testified that LeGarde picked up a bottle and tried to hit defendant with it, but he missed and the bottle fell to the ground and broke. Tiffany denied that this happened. The fight continued out into the street, where defendant ended up on his back, with Le-Garde standing over him, punching and kicking him, and threatening to kill him.
LeGarde finally went back inside the house after being called inside by Tiffany and her brother Chris. Tiffany and Chris testified that LeGarde was just coming out of tbe bathroom, where he had gone to clean up some blood from injuries caused by the fight. They testified that as Le-Garde walked into the kitchen with his face still in the towel and his head down, defendant burst through the back door and stabbed him with a piece of broken glass. LeGarde fell, and help was summoned. Defendant tried to help LeGarde, but he fled the scene when Chris went next door to get a neighbor who worked at a hospital. Tiffany and Chris denied that LeGarde was armed or had even walked toward defendant when he was stabbed.
Defendant testified that when LeGarde reentered the house, he was afraid that LeGarde was going to arm himself. He testified that Bell had told him that Le-Garde was a member of the Bally Boys, a gang known for violence. Bell testified that LeGarde had admitted to him that he was a Bally Boy. Defendant testified that he did not simply run away because he was living there and his possessions were in the house. He testified he armed himself with the broken piece of wine bottle for his own protection and went around the back of the house. He testified that when he entered the kitchen through the back door, he saw LeGarde emerging from the bathroom. He testified that when LeGarde took a few steps toward him, he closed his eyes and swung the piece of glass. LeGarde then stopped, said he was sorry, took a few steps backward, and fell to the floor. Defendant testified he tried to help LeGarde by holding towels against the wound, but he became scared and he fled the scene.
LeGarde received two stab wounds to the neck near his shoulder, the fatal one passing through the jugular vein and almost severing an artery. No weapon was found near LeGarde's body. Pieces of glass were found outside near the front steps and on the back steps. Defendant turned himself in the next day and gave a statement to the police which was read at trial but not included in the transcript or in the record.
The State presented two rebuttal witnesses, one LeGarde’s friend and the other the disciplinarian at LeGarde’s school, who both testified that they knew nothing about LeGarde being a Bally Boy. Neither witness knew anything about LeGarde getting into fights.
A review of the record for errors patent reveals there are none.
By his first assignment of error, the defendant contends that the trial court erred by admitting unduly prejudicial photographs of the victim. The defendant contends that their highly inflammatory nature more than outweighed any value they had to the prosecution of the case.
Louisiana jurisprudence has long held that in order to be admissible, “gruesome” photographs must have a probative value which outweighs their prejudicial effect. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Germain, 433 So.2d 110 (La.1983). In State v. Eaton, 524 So.2d 1194 (La.1988), cert. den. Eaton v. Louisiana, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989), the Court noted:
This court has established a number of well settled guidelines regarding the introduction of photographs. The mere fact a photograph is gruesome does not in and of itself render a photograph inadmissible. The test of admissibility is whether the probative value outweighs any prejudicial effect which may result from the display to the jury. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Beach, 320 So.2d 142 (La.1975); State v. Morris, 245 La. 175, 157 So.2d 728 (1963). Generally, photographs of a vie- *173 tim’s body which depict the fatal wounds are relevant to prove the corpus delecti, to establish the identity of the victim, the location, severity and number of wounds, and to corroborate other evidence of the manner in which the death occurred. Comeaux, 514 So.2d at 96. The trial court’s admission of an allegedly gruesome photograph will be overturned on appeal only if the prejudicial effect clearly outweighs the probative value. No error will be found unless the photographs are so gruesome so as to overwhelm the jurors’ reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543 (La.1986).
Eaton, at 1201. See also State v. Lindsey, 543 So.2d 886 (La.1989), cert. den. Lindsey v. Louisiana, — U.S. —, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990).
Here, the defendant argues that the photographs of the deceased were not necessary to the case because they really had no probative value in that the only issue was whether the killing occurred in self-defense. He argues that the photographs which show the body and the surrounding area are misleading because the blood was smeared when Chris Edgarson tried to wipe up some of it. However we find that their probative value in proving the corpus delecti, establishing the identity of the victim, the location, severity and number of wounds and in corroborating other evidence of the manner in which the death occurred outweighs any possible prejudicial effect.
In any event, the photographs, while not pleasant do not appear to be so gruesome as to have robbed the jury of its reason. As noted by the State, there was sufficient other evidence upon which the jury could have based their verdict. As such, it does not appear the trial court abused its great discretion by admitting them into evidence.
By his second assignment of error, the defendant contends the trial court erred by imposing an excessive sentence. The defendant received twenty-one years at hard labor, the maximum sentence he could have received for his manslaughter conviction.
Article 1, Section 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann, 471 So.2d 701 (La.1985); State v. Sherman, 557 So.2d 997 (La.App. 4th Cir.1990); State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). The imposition of a sentence, although within the statutory limit, may be unconstitutionally excessive if it is “grossly out of proportion to the severity of the crime” or “is nothing more than the purposeless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). See also Sherman, supra; Bell, supra. In order to insure adequate review by the appellate court, there must be an indication in the record that the trial court considered both the aggravating and mitigating factors set forth in La.C.Cr.P. art. 894.1 in determining the defendant’s particular sentence. Sherman, supra; Bell, supra.
At the sentencing hearing, the defense counsel was first allowed to make a statement in which he indicated that the defendant had been trying to turn his life around since his release from a juvenile facility in July, 1989. The killing here occurred in November, 1989. The trial court then noted that it had reviewed the defendant’s pre-sentence investigation report. The court noted that although the defendant had no prior felony convictions, being just seventeen years old, he had many prior juvenile adjudications which would have been felonies if the defendant could have been prosecuted as an adult. The court noted that the defendant had been adjudicated a delinquent for having committed simple burglary of an inhabited dwelling, aggravated battery by cutting someone, another simple burglary of an inhabited dwelling, and having been in possession of a knife when he was arrested for the second burglary charge. The court stated that these offenses had all occurred since January 1988. The court noted that the defendant had been released from Louisiana Training In *174 stitute in July 1989, and had killed LeGarde in November, 1989. The court noted that although it had tried to consider any mitigating factors, it could not find any. The court then sentenced the defendant to serve twenty-one years at hard labor. Although the trial court did not specifically enumerate the art. 894.1 factors, it appears it was aware of these factors and adequately complied with the article.
Once adequate aompliance with art. 894.1 is found, we then look to the facts and sentences of other cases to determine whether the sentence imposed is too severe in light of the particular circumstances of the defendant’s case, keeping in mind that the maximum sentences should be reserved for the most egregious violators of the offense so charged. Cann, supra; Brogdon, supra; Bell supra.
In most of the cases where a maximum sentence for manslaughter was upheld, the defendant was originally charged with first or second degree murder. However the facts in those cases are somewhat similar to those presented in this case.
In State v. Smith, 520 So.2d 1252 (La.App. 5th Cir.), writ denied 523 So.2d 1320 (La.1988), a defendant, with a prior criminal record, repeatedly stabbed the victim who tried to intervene in a fight between the defendant and his girlfriend. In State v. Ross, 515 So.2d 524 (La.App. 1st Cir.1987) a defendant with extensive prior convictions, stabbed his friend in a fight over a fifty-cent dice game. The court in Ross wrote:
Although defendant contends that this offense was not the most serious type of manslaughter, his argument, in essence, is that the court erred by imposing the maximum sentence because the homicide was committed in the heat of passion. However, since this factor constitutes the essential nature of a manslaughter defined in La.R.S. 14:31(1), it was necessarily accorded great weight by the Legislature in providing the possible sentence and by the State in its decision to offer and the court in its decision to accept a plea of guilty to the lesser offense. Moreover, although provocation may reduce a homicide to manslaughter if “the offense is committed in sudden passion ... immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection,” provocation shall not reduce a homicide to manslaughter if the jury finds the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed. La.R.S. 14:31(1); State v. Rayford, 476 So.2d 961 (La.App. 1st Cir.1985).
Id. at 525 The court concluded that the trial court had considered the facts of the instant offense as well as defendant’s criminal history and the risk to the public created by his conduct and it found no abuse of discretion.
Here, the defendant was only seventeen years old at the time of the stabbing. However, he had already had four juvenile adjudications which would have been felony convictions if he had been tried as an adult. Two of these adjudications involved a weapon, one of which was an aggravated battery by stabbing. The killing in this case occurred only four months after he was released from Louisiana Training Institute. Given these facts, it does not appear the trial court erred by imposing the maximum sentence on the defendant.
Accordingly, defendant’s conviction and sentence is affirmed.
AFFIRMED.