JjDOUCET, Chief Judge.
The Defendant, Terrell Callegari, was charged by bill of information filed October 13, 1998, with attempted second-degree murder of Herbert Fulton, in violation of La.R.S. 14:27 and La.R.S. 14:30.1(A)(1). The Defendant initially pled not guilty, later changed his plea to guilty and then filed a Motion to Withdraw Plea. The trial court granted the motion and the Defendant once again pled not guilty. A jury trial was held September 13-14, 1999, with the jury returning a unanimous verdict of guilty of aggravated battery.
Thereafter, by bill of information filed September 28, 1999, Defendant was charged as a habitual offender under La. R.S. 15:529.1. After a hearing in which the Defendant was adjudicated a second-felony offender, he filed a Motion for Post Verdict Judgment of Acquittal or Alternatively for New Trial. Those motions were denied, after a hearing, on October 26, 1999. Subsequently, on January 11, 2000, the Defendant was sentenced to eighteen years at hard labor without benefit of probation, parole, or suspension of sentence. The Defendant objected to the sentence and gave oral notice of intent to appeal. A Motion for Reconsideration of Sentence was filed and denied on January 14, 2000. A Motion for Appeal was filed and granted January 14, 2000.
ERRORS PATENT and ASSIGNMENT OF ERROR NO. 6:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed *808 by the court for errors patent on the face of the record. After reviewing the record, we find there are two errors patent.
| ¡¡First, the trial court imposed the Defendant’s sentence without benefit of parole when neither the penalty provision of the substantive statute nor the habitual offender provision authorized such a restriction on the Defendant’s parole eligibility.
The penalty for aggravated battery is imprisonment with or without hard labor for up to ten years, and a possible fine of not more than five thousand dollars. La. R.S. 14:34. La.R.S. 15:529.1 provides in pertinent part as follows:
A. (l)(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
[[Image here]]
(G) Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.
We note that when initially imposing the sentence, the trial court stated that it was to be served “without benefit of probation, parole or suspension of sentence.” (Emphasis added.) The court then informed the Defendant of his eligibility for good time under La.R.S. 15:573.3. In closing, the trial court stated, “the sentence being imposed is specifically without benefit of probation or suspension.” The minutes of sentencing, as does the trial judge’s initial pronouncement, indicate the trial court imposed the sentence without benefit of parole, probation or suspension of sentence. Although the latter statement made by the trial judge indicates he may not have intended to prohibit parole eligibility, because of his first statement at sentencing and because of the minutes of the sentencing proceeding, this court, out of an abundance of caution, will treat the sentence as illegal.
I » In State v. Gregrich, 99-178 (La.App. 3 Cir. 10/13/99); 745 So.2d 694, this court corrected an illegal sentence by simply deleting the illegal portion where the trial court illegally ordered the defendant to participate in a substance abuse program. This court discussed the issue as follows:
An illegal sentence may be corrected at any time by an appellate court on review. La.Code Crim.P. art. 882(A).
[WJhen correction of an illegal sentence does not involve the exercise of sentencing discretion, there is no reason why the appellate court should not simply amend the sentence.... However, if correction involves the exercise of sentencing discretion ... the case must be remanded for the trial court to perform that function.
Fraser, 484 So.2d at 124 n. 5.
In State v. Prince, 97-0727 (La.9/26/07); 701 So.2d 965, the supreme court simply amended the sentence imposed by the trial court to delete the requirement of restitution where restitution was not authorized by statute. Also, in State v. Lee, 94-0814 (La.6/17/94); 641 So.2d 206, the supreme court simply amended a sentence to delete the requirement of restitution where restitution was not authorized by statute. In State v. Yancy, 93-2798 (La.5/31/96); 673 So.2d 1018, the supreme court amended the sentence to delete only that portion denying the defendant eligibility for parole where at the time of the crime there was no requirement of parole ineligibility. In State v. Yarbrough, 596 So.2d 311 (La.App. 3 Cir.), writ denied, 599 So.2d 317 (La.1992), the third circuit amended the portion of the defendant’s sentence that precluded parole, probation, or suspension of sentence where the preclusion of those benefits was not authorized by statute.
*809 We note that in State v. Narcisse, 97-3161 (La.6/26/98); 714 So.2d 698, the supreme court vacated a sentence and remanded to the trial court for resen-tencing where the trial court erroneously required restitution and denied the defendant eligibility for good-time credits. In Narcisse, the supreme court did not state that it was required to remand the sentence because the case involved the exercise of sentencing discretion. Rather, it appears that the supreme court may have been exercising its own discretion in remanding the case, because La.Code Crim.P. art. 882(A) does not require that an appellate court correct an illegal sentence but provides that the appellate court “may” correct an illegal sentence on review.
|4We find the instant case is analogous to Prince, Lee, Yancy, and Yarbrough such that the correction does not involve the exercise of sentencing discretion. Therefore, we amend the sentence imposed by the trial court to delete that portion requiring participation in substance abuse evaluations and the following of the recommendations resulting from them.
Id. at pp. 3-4; 696.
Although the present case is distinguishable from Gregrich in that it involves a different sentencing error, the present case is analogous to Yancy and Yarbrough because they involved the same type of sentencing error, i.e., the erroneous denial of parole eligibility. Thus, we choose to follow Gregrich, Yancy, Yarbrough, and Lee and simply amend the Defendant’s sentence by deleting the restriction on his parole eligibility.
Second, the trial court erroneously informed the Defendant that he had three years to file post-conviction relief. Since the Defendant was sentenced after the two-year prescriptive period became effective, the trial court should have informed the Defendant of the new prescriptive period. Accordingly, the trial court is instructed to inform the Defendant of the correct, two-year prescriptive period provided for in La.Code Crim.P. art. 930.8 by “sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the [Defendant received the notice in the record of the proceedings.” State v. Courtney, 99-1700 (La.App. 3 Cir. 5/3/00); 761 So.2d 112.

FACTS:

See Assignment of Error Number One, below.
| ^ASSIGNMENT OF ERROR NO. I:
The Defendant contends the evidence presented at trial was insufficient to convict him of aggravated battery. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. “Aggravated battery is a battery committed with a dangerous weapon.” La.R.S. 14:34. A battery is defined in La.R.S. 14:33, in pertinent part, as “the intentional use of force or violence upon the person of another.”
At trial, the victim, Herbert Fulton, testified that he is a forty-five-year-old college graduate and a former police officer. He stated that on June 1,1998, he received a call about 10:00 p.m. and went to the Bunkie Police Station. His two sons had been arrested for fighting with five or six other young men at a nearby party on Cottonwood Street. Fulton stayed and *810 spoke with an officer after his sons were released. Shortly thereafter, Fulton left on foot to look for his sons. He stated he assumed his sons were upset because they were the only ones arrested. Fulton was walking toward the Augustine Apartments when he saw the Defendant standing near a Laundromat, fifty to sixty feet away talking to Keith Plasco. Fulton testified that he could clearly identify the men because they were standing near a light pole. Fulton testified he knew Callegari and identified him in court. Fulton stated he heard | fithe Defendant yell “Slick, give me your heat.” Then Plasco tossed Callegari a sawed-off shotgun and the Defendant fired. Fulton stated he raised up his right arm to shield his head and was struck in the arm with three pellets. After he was shot, Fulton ran down the street to the National Guard Armory and hid until the police arrived. He stated he had no weapon on him that night and that he did not fire at the Defendant. Fulton testified the police frisked him for a weapon and found none. Fulton was treated and released at Bunkie General Hospital and went to work the next morning. He testified that the gun pellets in his arm were small bird shot.
On cross examination, Fulton testified that he did not speak to the Defendant that night. Fulton did not know why the Defendant shot him, but surmised that the Defendant knew he was a former police officer and might be carrying a gun. Fulton stated he owned two handguns but did not regularly carry a gun. Further, he testified that he neither told the Defendant he had a gun, nor did he reach for a gun. Fulton stated he was not in a vehicle at any point from the police station until the shooting. Fulton’s sons arrived at the Augustine Apartments after they heard he had been shot and that the first time he saw his daughter, Latoya, that night was at the hospital.
The witnesses who testified for the defense had various accounts of what took place that night. Roderick Horn, a Southern University student, testified he knew Fulton and was a good friend of the Defendant. He stated that on June 1, 1998, there was a fight between the Defendant and Fulton’s son, Condrick Lewis. When the police arrived at the party, Horn stated he and the Defendant left, heading to the Augustine Apartments where Defendant lived. There they talked for a while before he left to walk home. Horn testified that on the way home he saw Fulton in his blue Chevrolet truck with his two sons about a block away. He stated he also saw Fulton’s ^daughter, Latoya, in her white Cutlass or Regal. Horn testified he knew there was going to be trouble. He stated he heard two, maybe three, gunshots as he continued to walk home. Horn was never questioned by the Bunkie Police Department. Nine months after the shooting, Horn was asked by the Defendant’s mother to give her a handwritten statement. Horn’s statement, which was introduced into evidence by the State, was dated February 21,1999, and did not mention Horn hearing any gunshots that night.
Paul Green testified he saw the shooting on June 1, 1998. He stated he saw a bunch of guys running toward Augustine Apartments where he lived, and that he heard yelling and arguing. Green testified that he heard a shot fired and saw Fulton with a gun in his hand while the Defendant was still running with some other guys. He explained that there was more than one shot that came from two different guns, but that he did not see another gun at the scene. Green testified he was standing forty to fifty feet away when he saw the shooting.
On cross examination, Green admitted he had a 1995 conviction for possession with intent to- distribute cocaine and that he had served two-and-a-half-years in prison. He explained that he was on probation for possession with intent to distribute at the time of his second felony drug offense. On cross examination, Green testified Fulton pulled up and asked for the Defendant. Green testified he did not see *811 Fulton in a blue Chevrolet pickup, but saw him near a white Cutlass. He stated he did not recall the Defendant saying anything, nor could he recall hearing the Defendant yell for “Slick” to give him a gun. Green also gave a signed, handwritten statement to the Defendant’s mother on February 21, 1999. The State introduced the statement into evidence as S-2 and had Green read from his statement where he had stated the |sDefendant asked Keith • Plasco to hand him his gun. He explained that he was not lying on the stand, because he had just testified that he could not recall the Defendant making that statement. Green’s statement also recounted that when Fulton saw the Defendant he flashed his gun at him. The Defendant told Fulton he knew he was not going to shoot him in front of everyone; Fulton fired, and the Defendant returned fire. Green testified that he told the police what happened when they arrived on the scene that night, but they neither took his written statement then, nor interviewed him later.
Tyrone Jones, another friend of the Defendant’s, testified that he was with the Defendant when the fight broke out at the party. He was walking the Defendant home to the Augustine Apartments when he saw Fulton’s family driving nearby in a white Cutlass. Jones testified Fulton was in a blue truck. Jones testified that he wanted to defend the Defendant but the Defendant did not stand next to him because he did not have a gun. He knew Plasco had a gun. Jones said he saw Fulton get out and fire a gun. Then the Defendant fired back with a sawed-off shotgun. Jones testified that he did not see Fulton get hit because he was about fifty feet away. When the police arrived, Jones tried to get away and went to the Defendant’s house. Jones testified that he did not know where the Defendant went after the fight and that the Defendant showed up at the police station three weeks later. Jones was never contacted by the police, but he did tell the Defendant’s mother what had happened.
Marcus Valiant, another friend of the Defendant’s, testified that he was standing outside his Augustine apartment that night when he saw a lot of people running and screaming. He stated he heard a pistol shot so he ran inside his apartment. He also testified on direct that he did not see either Fulton or the Defendant that night. Later in his testimony, Valiant testified that he saw Fulton |9running with a pistol across the other side of the apartments. Valiant stated he knew Fulton from seeing him and knew his name. However, Valiant never identified Fulton on the record in court.
On cross examination, Valiant admitted he had a prior conviction for possession with intent to distribute cocaine and that he had been sentenced to probation. Valiant testified he could not estimate how far away he was from Fulton when he saw the pistol. He stated he was maybe eight feet away. Valiant testified he did not see any cars in the area. Valiant stated he never talked to anyone about this incident until the Defendant’s mother asked him to give a statement about one year later. He, also, did not give a statement to the police.
The Defendant’s girlfriend, Tanisha Adams, testified that after the fight at the party, Fulton came to her house asking for the Defendant. She said Fulton was with his sons and their friends. Adams described three cars, being driven by Deme-tris Wilson, Onesha Wilson, and Latoya Dobbins, following the men. On cross examination, Adams testified that she did not give a statement to the police but did give the Defendant’s mother her statement. She stated that she did not put the information about the three vehicles in her statement because she did not think it was important.
The Defendant’s mother, Brenda Calle-gari, testified on behalf of her son. She stated that she heard her son had been in a confrontation so she drove to where the party was held. The police were on the scene and everyone had left so she drove *812 to the store. Ms. Callegari testified she saw a large group of people walking down Main Street near the police station. She stated she recognized Fulton because he was the tallest person in the crowd. Calle-gari testified that she went to the police station to Iminform them that there was going to be trouble; meanwhile, the police were dispatched to the Augustine Apartments. Callegari testified that she asked the witnesses for statements because the police were not properly investigating the crime.
It is our conclusion that the evidence presented at trial, viewed in the light most favorable to the prosecution, sufficiently proved that the Defendant was guilty of aggravated battery. The State was required to prove beyond a reasonable doubt that the Defendant, while armed with a dangerous weapon, intentionally used force or violence upon the person of Fulton. La.R.S. 14:33; 14:34.
Fulton testified that, for no apparent reason, the Defendant shot at him with a sawed-off shotgun. Fulton testified that he was struck by three pellets from the shotgun. Further, defense witnesses Tyrone Jones and Paul Green testified that they saw the Defendant fire a sawed-off shotgun at Fulton, albeit they claimed it was after Fulton had fired at him first. Therefore, the elements of aggravated battery are satisfied. The evidence showed that the Defendant shot Fulton with a dangerous weapon, thereby intentionally using force or violence upon Fulton’s person.
However, the inquiry does not end there. The Defendant contends that he is not guilty of aggravated battery because he fired at Fulton in self-defense. In brief, the Defendant states that he must carry the burden of proving self-defense by a preponderance of the evidence, citing State v. Anderson, 98-492 (La.App. 3 Cir. 10/28/98); 721 So.2d 1006, writ denied, 98-2976 (La.3/19/99); 739 So.2d 781. This court has held in State v. Hall, 606 So.2d 972, 974-74 (La.App. 3 Cir.1992), writ denied, 93-51 (La. 11/11/94); 644 So.2d 385 that: “The issue of self-defense requires a dual inquiry: (1) an objective inquiry into whether the force used was reasonable ^L^under the circumstances; [and] (2) a subjective inquiry into whether force was apparently necessary. State v. Perkins, 527 So.2d 48 (La.App. 3 Cir.1988).”
The Defendant’s self defense claim hinges on a credibility determination. Two of the defense witnesses testified that they saw the victim, Fulton, brandishing a gun. Another witness testified that he saw Fulton fire first at the Defendant. However, Fulton testified that he was unarmed when he approached the Defendant and did not provoke him. The jury obviously believed Fulton’s testimony that he was unarmed. Therefore,, the Defendant’s use of force was not reasonable under the circumstances.
In State v. Barnes, 590 So.2d 1298 (La.App. 1 Cir.1991), the first circuit held that a rational trier of fact could have concluded the defendant did not act in self-defense even though witness testimony was conflicting and that the evidence was sufficient to convict him of aggravated battery. In Barnes, the defendant struck the victim in the back with an ax handle. The defendant did not testify at trial but a witness testified that the victim began the fight by raising a swing blade to try to strike the defendant; however, the defendant anticipated this and struck the first blow with his ax. The victim testified that the defendant suddenly charged him from behind and that he never threatened the defendant at any time prior to this. Other witnesses saw the defendant strike the victim, but did not see the beginning of the fight. The court held that the jury’s determination of the credibility of the witnesses was not a matter of sufficiency, but of the weight of the evidence. If the defendant’s witness had been believed, then the evidence would have been sufficient to prove self-defense; however, the jury’s guilty verdict revealed that the jurors accepted the victim’s testimony.
*813 | ^.Similarly in the instant case, the victim testified that he was shot by the Defendant in an unprovoked attack, and the jury chose to believe his testimony. We conclude the evidence was sufficient to negate the Defendant’s claim of self-defense. In State v. Bernard, 98-994, p. 7 (La.App. 3 Cir. 2/3/99); 734 So.2d 687, 691 this court explained:
It is well settled in Louisiana law that a jury may rely on a single witness’s testimony to establish a factual element required to prove guilt, provided there is no internal contradiction or irreconcilable conflict with physical evidence. State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309, writ denied, 96-0681 (La.5/16/97); 693 So.2d 793... The testimony of one witness, if believed by the trier of fact, is sufficient to support the requisite factual conclusion in the absence of internal contradictions or irreconcilable conflict with the physical evidence. State v. Henry, [Id.] The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Tompkins, 403 So.2d 644 (La.1981), appeal after remand, 429 So.2d 1385 (La.1982).
This court noted the following in State v. Lambert, 97-64, p. 5 (La.App. 3 Cir. 9/30/98); 720 So.2d 724, 727:
It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel Graffagnino v. King, 436 So.2d 559 (La.1983), citing State v. Richardson, 425 So.2d 1228 (La.1983).
In State v. Taylor, 96-1043, p. 5 (La.App. 3 Cir.1997); 688 So.2d 1262, 1267, this court has also held that:
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), unit denied, 507 So.2d 226 (La.1987).
1 iaThus, we find the evidence was sufficient to sustain the Defendant’s conviction of aggravated battery. The Defendant did not carry his burden of proving by a preponderance of the evidence that he acted in self-defense. A reasonable jury could have found that the Defendant did not shoot Fulton in self-defense. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2 :

The Defendant argues the trial judge erred in denying his Motion for Post Verdict Judgment of Acquittal or Alternatively for New Trial. The Defendant’s motion stated that his guilty verdict for aggravated battery was contrary to the law and evidence. La. Code Crim.P. art. 832 states that a motion for post verdict judgment of acquittal “shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.” La. Code Crim.P. art. 851 states that a new trial shall be granted when the verdict is contrary to the law and evidence.
At the hearing on the motions, the defense attorney argued that because the jury found the Defendant guilty of aggravated battery, instead of attempted second-degree murder, as charged, they must have believed the victim had fired first at the Defendant. Counsel contended that sufficient evidence was presented at trial to prove self-defense and the Defendant should have been acquitted. In his reasons for ruling, the trial judge stated that if the Defendant’s claim of self defense had *814 been believed by the jury, then the jury would have acquitted him. The court further stated that the evidence at trial, when viewed in the light most favorable to the state, was sufficient to sustain the jury verdict. The Motion for Post Verdict Judgment of Acquittal was denied. Defense counsel did not argue anything further in support of the Motion for |uNew Trial. Without discussion, the trial court denied the Motion for New Trial.
The Defendant argues in brief that the jury could not have rationally concluded that the Defendant did not act in self defense in “fending off Fulton’s attack.” However, viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to support the jury’s belief of Fulton’s testimony that he was unarmed and shot by the Defendant in an unprovoked incident. Accordingly, for the reasons stated above in the sufficiency of evidence review, we find the trial court did not err in denying the Defendant’s Motion for Post Verdict Judgment of Acquittal.
Defendant also seeks review of the trial court’s denial of his motion for new trial. Under State v. Hampton, 98-0381 (La.4/23/99); 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999), and State v. Snyder, 98-1078 (La.4/14/99); 750 So.2d 832, the denial of a motion for new trial on the basis of insufficient evidence provides nothing for review. This court held in State v. Landry, 524 So.2d 1261 (La.App. 3 Cir.), writ granted in part on other grounds, 531 So.2d 254 (La.1988), appeal after remand, 546 So.2d 1231 (La.App. 3 Cir.1989), that the trial court’s review of a motion for new trial differs from the Jackson standard of review. The trial court is to review the weight of the evidence and make a factual determination as a “thirteenth juror.” Even though in this case the trial judge did not state the standard he used in reviewing the Defendant’s motion for new trial, it can be presumed on appeal that the judge properly applied the “thirteenth juror” standard. State v. Washington, 614 So.2d 242 (La.App. 3 Cir.), writ denied, 619 So.2d 575 (La.1993).
|1sAfter reviewing the evidence presented at trial, we conclude the trial judge did not abuse his discretion sitting as the “thirteenth juror.” Therefore, this assignment of error is likewise without merit.

ASSIGNMENTS OF ERROR NOS. 3 and 4:

The Defendant argues the trial court erred in imposing an excessive sentence in response to the habitual offender adjudication, and the trial court erred in denying his Motion for Reconsideration of Sentence. After adjudicating him a second-felony offender, the trial judge sentenced the Defendant to eighteen years at hard labor without the benefit of probation, parole, or suspension of sentence. We note we have already found this sentence to be illegal and have set forth the appropriate action to correct this error in our error patent review above.
Under La.R.S. 14:34 and La.R.S. 15:529.1 (see ERRORS PATENT section) the Defendant could have been sentenced up to twenty years at hard labor without benefit of probation or suspension of sentence.
At sentencing, the trial judge stated that he had reviewed the Defendant’s Pre-Sen-tence Investigation Report and noted that the Defendant had a juvenile criminal history as well as “a life of crime throughout his adult years.” The judge stated the Defendant’s adult record includes multiple misdemeanor charges prosecuted through Bunkie City Court; a felony theft conviction in Rapides Parish; an aggravated battery arrest in Avoyelles Parish which was reduced to simple battery; and the instant offense of aggravated battery. The judge further stated that the Defendant’s history reflects that he has “led a life of crime and has a total disregard for the law.” He noted the Defendant had not been a productive member of society, unlike other members of his family.
*815 |1fiAt the sentencing proceeding, on January 11, 2000, the trial judge stated:
This twenty-two (22) year old man has no job, and, apparently, has not had any previous intent of finding work, or becoming a productive member of society. In reviewing the Pre-Sentence Investigation Report and other submissions to the court from various members of the Bunkie Community, it is interesting to note that most members of the law en-foretement community are requesting that a maximum sentence be imposed on this defendant.
All evidence submitted to the court indicates that Mr. Callegari has been a serious problem in the Bunkie Community. This is his second violent crime; he has alleged to be a gang leader; he has alleged to be a drug dealer. In submissions to the court, through the Pre-Sentence Investigation Report, also indicate that he has been rumored to be involved with under aged girls.
One individual referred to Terrell Cal-legari as being a “menace to society;” several individuals have communicated to the court that the streets of Bunkie are now safer, due to the fact that Terrell Callegari is incarcerated.
The trial judge stated he relied on three similar cases in sentencing the Defendant: State v. Godfrey, 476 So.2d 1174 (La.App. 3 Cir.1985), appeal after remand, 495 So.2d 956 (La.App. 3 Cir.1986), affirmed on remand, 507 So.2d 1252 (La.App. 3 Cir.), writ denied 512 So.2d 440 (La.1987); State v. Chaney, 444 So.2d 266 (La.App. 1 Cir.1983); and State v. Bell, 543 So.2d 965 (La.App. 4 Cir.1989). In Godfrey, the second-felony offender was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence for aggravated battery. In Chaney, the second-felony offender was convicted of aggravated battery and sentenced to eighteen years at hard labor. In Bell, the second-felony offender was sentenced to fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence for aggravated battery. These defendants’ sentences were affirmed on appeal.
|17The trial judge stated he reviewed the sentencing guidelines in La.Code Crim.P. art. 894.1and found the Defendant in need of custodial treatment; that he is not entitled to a suspended sentence or probation; and that a lesser sentence would deprecate the seriousness of this crime. He noted there were no mitigating factors applicable to the Defendant’s case. The Defendant argues in brief that the trial judge did not consider the mitigating factor that the victim facilitated this crime and that the Defendant fired at him in self-defense. The Defendant states the victim suffered no serious bodily harm and returned to work the next day. Further, the Defendant claims that his prior felony conviction of theft was a nonviolent crime and did not warrant the imposition of the eighteen-year sentence. During sentencing the trial judge stated:
In reviewing the aggravating factors involved, the court notes the following:
1) Mr. Callegari’s conduct manifested deliberate cruelty to Mr. Fulton;
2) Mr. Callegari knew, or should have known, that Mr. Fulton was particularly vulnerable or incapable of resisting a shotgun;
3) Mr. Callegari used actual violence jn the commission of the offense;
4) The offense resulted in a significant prominent injury to Herbert Fulton. Some of the pellets from the shotgun are still embedded in his arm and shoulder;
5) Mr. Callegary [sic] used a dangerous weapon in the commission of the offense;
6) He foreseeably endangered human life, by discharging a fire-arm during the commission of the offense;
A seventh (7th) aggravating factor is:
|1S7) His long history of delinquent and criminal activity;
*816 8) He has been convicted of several offenses; criminal damage to property; theft; no driver’s license; disturbing the peace; no driver’s license, again; open container violations; no driver’s license again; felony theft; aggravated battery reduced to simple battery; flight from an officer; simple assault and simple battery, and now, aggravated battery;
9) Additionally, he’s been arrested, but no record found of charges of aggravated assault, disturbing the peace, and criminal trespass.
In State v. Dubroc, 99-730, p. 22 (La.App. 3 Cir. 12/15/99); 755 So.2d 297, 311, this court stated:
To constitute an excessive sentence, this court must find the penalty imposed is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals; and, therefore, it is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981). The trial court is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Pyke, 95-919 (La.App. 3 Cir. 3/6/96); 670 So.2d 713.
La.Code Crim.P. art. 894.1(C) provides: “The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.” Additionally, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant’s sentence. State v. Smith, 433 So.2d 688 (La.1983).
In brief, the Defendant argues that the sentencing record contains an “insufficient factual basis and explanation of the sentencing choice.” However, the record reflects that the trial judge specifically considered the La.Code Crim.P. art. 894.1 guidelines and particularized the Defendant’s sentence. Given the Defendant’s |1flcriminal history and his second-felony offender status, it cannot be said that his near maximum sentence shocks one’s sense of justice, nor is it excessive.
Within his excessiveness of sentence claim, Defendant also alleges the trial judge mistakenly thought he was required to deny good-time. This issue is disposed of in Assignment of Error No. 7.
After considering Defendant’s arguments and examining the record, we find the trial judge did not abuse his discretion in denying the Defendant’s Motion for Reconsideration of Sentence. Thus, these assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 5:
The Defendant contends the evidence was insufficient to sustain his adjudication as a habitual offender. He argues that the trial court erred in finding that his prior guilty plea satisfied the requirements in State v. Jones, 404 So.2d 1192 (La.1981). The Defendant states in brief that Jones requires that in order for a prior guilty plea to be used for enhancement purposes, the trial court must have informed the defendant that by pleading guilty he was waiving his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers, and make certain that the defendant has a full understanding of what the plea connotes and its consequences. Although that statement is correct, the holding of Jones is distinguishable from the instant case. The court in Jones held that the minute entry of the defendant’s prior driving while intoxicated guilty plea did not show that he waived any constitutional right other than his right to counsel. Therefore, the defendant’s conviction of driving while intoxicated, third offense, was vacated, along with his underlying guilty plea. In the instant case, the minutes of the Defendant’s prior guilty plea specifically reflect that he was advised of his “constitutional rights, | ¡^including, among others, the right to trial by judge or jury, the right against self- *817 incrimination and the right to confront and cross examine witnesses against him.”
The Defendant argues that during his guilty plea on June 10, 1997, the trial court did not specifically address him and determine if his plea was voluntary. Thus, he contends that his habitual offender adjudication must be vacated and set aside for this reason. The requirements of a habitual offender adjudication are found in La.R.S. 15:529.1. Section D(l)(b) states that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof and requires that a defendant file a written response to the habitual offender bill of information if he claims that a prior conviction is invalid. In the instant case, the Defendant filed a Response and Objection to Billing Under Habitual Offender Law. The Defendant’s objection stated that any prior felony convictions were invalid and obtained in violation of his Constitutional rights, his right to due process, and in violation of his rights pursuant to Boykin. La.R.S. 15:529.1D(l)(b) states that the defendant “shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response.” At the habitual offender hearing, the State introduced into evidence the bill of information, filed February 13, 1996, that charged the Defendant with felony theft, and the court minutes reflecting that on June 10, 1997, the Defendant pled guilty as charged. The minutes state that the Defendant was advised of and waived his constitutional rights against self-incrimination, right to trial by judge or jury, and the right to confront and cross examine witnesses against him. The minutes further reflect that the Defendant was represented by counsel.
At the hearing, the State produced the Defendant’s probation officer, David Gau-thier, who identified the Defendant and testified that the Defendant was the same l^man who pled guilty to felony theft on June 10, 1997. Gauthier identified S-l as the bill of information that charged the Defendant with felony theft. He also stated that the records indicated that the Defendant was represented by counsel and that his rights were explained to him. On cross examination, Gauthier testified that he was not present when the Defendant pled guilty
Freeman Ford, administrative assistant for the district attorney, testified that he was present in court when the Defendant was convicted of aggravated battery on September 14, 1999. He identified the Defendant at the hearing. The State introduced into evidence the minutes of the Defendant’s aggravated battery conviction as S-2. On cross examination, Ford testified that he had no knowledge of the Defendant’s prior guilty plea.
The Defendant cross-examined the State’s witnesses, but did not offer any evidence to prove the invalidity of his prior guilty plea. At the hearing, the trial court adjudicated the Defendant a second-felony offender. Thus, the State met its initial burden by proving a prima facie case with the documents and testimony presented at the hearing. The Defendant did not overcome his burden to prove otherwise. The evidence presented at the habitual offender hearing was sufficient to sustain the Defendant’s adjudication as a second-felony offender. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 7:
The Defendant contends the trial court erred during sentencing by stating that he was required to deny the Defendant diminution of sentence for good behavior. The Defendant states that the trial court’s mistaken assumption created excessive punishment.
| g2The Defendant did not raise this alleged error in his Motion for Reconsideration of Sentence. La.Code Crim.P. art. 881.1(D) (emphasis added) states:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, in- *818 eluding a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Therefore, the Defendant’s failure to raise this error in his Motion for Reconsideration of Sentence precludes the Defendant from raising this error on appeal.

DISPOSITION:

The Defendant’s conviction is affirmed. His sentence is amended to delete the prohibition of parole eligibility and the sentence affirmed as amended. Additionally, the district court is directed to inform the Defendant that pursuant to La.Code Crim.P. art. 930.8, he has two years from the date his judgment and sentence become final to apply for post-conviction relief. This notice shall be in writing and sent to the Defendant within ten days of the rendition of this opinion. Written proof that the Defendant received the notice shall be filed in the record of the proceedings.

CONVICTION AFFIRMED; SENTENCE AMENDED.